Harry H. ROBERTS, Respondent,

v.

The EMERSON ELECTRIC MANUFACTURING COMPANY, a corporation, Appellant.

No. 48988.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Harry H. Roberts pro se.

R. H. McRoberts, R. H. McRoberts, Jr., St. Louis, for defendant-appellant. Bryan,

Cave, McPheeters & McRoberts, St. Louis, of counsel.

HOUSER, Commissioner.

Harry Roberts sued The Emerson Electric Manufacturing Company for failure to comply with the service letter statute, § 290.140 RSMo 1949, V.A.M.S. At the first trial plaintiff recovered judgment for $17,800, reversed on appeal for error in an instruction. Roberts v. Emerson Electric Manufacturing Co., Mo.Sup., 338 S.W.2d 62. Reference is made to that opinion for the general factual background. A second trial resulted in a jury verdict for defendant. The trial court granted plaintiff a new trial and defendant has appealed from the order sustaining plaintiff's motion for a new trial.

■ We have jurisdiction, since plaintiff prays in his petition for $50,000 actual and $50,000 punitive damages.

The trial court granted a new trial "for the reasons stated in Paragraphs 10, 11, 12, 13, 14, 15, 16 and 19 of Plaintiff's Motion for New Trial," which follow:

"10. Because the Court erred in allowing defendant to introduce, over the objection of the plaintiff, incompetent, irrelevant and immaterial evidence offered by the defendant.

"11. Because the Court erred in refusing to strike out and to instruct the jury to disregard, upon motion of the plaintiff incompetent, irrelevant and immaterial evidence offered by the defendant and received in evidence.

"12. Because the Court erred in excluding, upon objection of defendant, competent, relevant and material evidence offered by the plaintiff.

"13. Because the Court erred in striking out and instructing the jury to disregard, upon motion of defendant, competent, relevant and material evidence offered by the plaintiff and received in evidence.

"14. For the reason that the court erred in giving and reading to the jury, over plaintiff's objections, an erroneous, improper, illegal and prejudicial instruction, offered by the defendant, said instruction being numbered 3 for the reason that said instruction erroneously instructed the jury on an issue not relative or pertinent to said case and which instruction was outside of the issues involved therein; that said instruction was highly prejudicial and injected an issue in said case which was not applicable or relevant thereto.

"15. That the court herein should grant a new trial for the further reason that plaintiff's cause of action was based upon a statute which required the defendant corporation to furnish plaintiff with a letter truly stating the reasons or cause for plaintiff's discharge or leaving the defendant's service. And, that in the testimony of defendant's witness, G. F. Craig, it was revealed that said witness was confused at the time of the writing of such letter and did not know the true reason for discharging the plaintiff; that defendant's counsel, R. H. McRoberts, in his summation or closing argument, told the jury that they, meaning Emerson Electric Manufacturing Company, G. F. Craig and others concerned therewith did not know who had falsified certain charts mentioned in the evidence or who had destroyed a certain chart mentioned in the evidence as Chart 'B'.

"16. That the plaintiff denied categorically that he had neither (sic) destroyed a chart or falsified a chart and that thereupon the burden of proof of the destruction of a chart or the falsification of another chart was upon the defendant and that said defendant failed to carry said burden and further admitted both in the testimony of G. F. Craig and in the closing argument of R. H. McRoberts that they, meaning the Emerson Electric Manufacturing Company and G. F. Craig, did not know who had destroyed said chart or falsified said other chart; that by reason thereof the defendant wholly failed to refute plaintiff's evidence concerning said charts.

"19. The court erred in admitting evidence in chief of defendant, over the objections of plaintiff concerning the relationship between the plaintiff and his attorney or other attorneys; that said evidence was highly prejudicial, inflammatory and immaterial to any issue involved in the case; that said evidence prejudiced the jury against the plaintiff and bore no relation to the issue in the case i. e. whether the letter sent to plaintiff *truly* (emphasis ours) stated the cause for plaintiff's discharge."

■ That portion of the order of the trial court assigning paragraphs 10–13, both inclusive, as grounds for granting a new trial does not meet the requirement of § 510.370, RSMo 1959, V.A.M.S., and Sup.Ct. Rule 75.01, V.A.M.S., that every order granting a new trial specify the grounds therefor. The purpose of the statute and rule is not served or fulfilled by the assignment of such general and unspecific "grounds." They furnish no significant information either to defendant or to this Court as to the real basis of the court's action. Johnson v. Kansas City Public Service Co., 360 Mo. 429, 228 S.W.2d 796. In this situation, under Sup.Ct.Rule 83.06(b), there is a presumption that the trial court erroneously granted the motion for new trial on these grounds, and the burden of supporting the action of the trial court is placed upon respondent. Johnson v. Kansas City Public Service Co., supra. Respondent failed to meet that burden. In his 45-page brief respondent makes no effort to support the action of the trial court in granting a new trial for improperly receiving or refusing to exclude evidence offered by defendant, or for improperly excluding evidence offered by plaintiff, or for improperly striking evidence offered by plaintiff and admitted in evidence (except as to Paragraph 19, which we consider fully hereinafter).

■ Of the grounds which are sufficiently specific to merit consideration, Paragraph 14 assigns error in the giving of Instruction 3, which follows: "The Court instructs the jury that this action is not one for damages for wrongful discharge of plaintiff by defendant, and the question as to whether plaintiff was rightfully or wrongfully discharged by defendant is not material to any of the issues in this action and should not be considered in your deliberations." Instruction 3 was a cautionary instruction intended to guard against the consideration of a false issue. "It is not only the office of instructions to inform the jury as to the law of the issues raised, but, where the evidence is of a character as might easily lead to the raising of a false issue, the court ought to guard against such an issue by appropriate instructions." Estes v. Desnoyers Shoe Co., 155 Mo. 577, 56 S.W. 316. Some of plaintiff's evidence was of that character. For instance, plaintiff emphasized his long tenure of employment with Emerson (31 years); his receipt of awards for meritorious suggestions during his employment; that he was discharged through a conspiracy between the company and the union; that at the time of his discharge plaintiff was suffering from pneumonia and diabetes and could not appear and defend himself at the final hearing on the charges made against him; that he was nevertheless proceeded against in his absence; that before discharge he was earning about $7,000 a year; that after discharge he went to more than fifty places of employment looking for work, but was unable to get a job. Instruction 3 was properly given in order to direct the jury away from the false issue of wrongful discharge.

■■ The grounds stated in Paragraphs 15 and 16 are insufficient as a basis for the granting of a new trial. The transcript reveals no confusion on the part of defendant's Mr. Craig at the time he wrote the service letter, or any failure on his part to know and understand the true reason for plaintiff's discharge, or who had destroyed the one chart and falsified the other. He testified clearly and without any confusion to the following: The plant engineer and his assistant showed him two charts, Chart C, which was whole and entire, and another

chart which had been torn up and pasted together on a piece of paper, both of which covered the same time period. The line tracing on Chart C appeared to him to have been manually drawn. It was not a normal line as it would appear on a temperature indicator. He was told that plaintiff had been on duty during that shift. He conducted a hearing. Plaintiff and his union representatives were present. Plaintiff, confronted with the torn up chart, denied that he had ever seen it previously, but admitted that it "looked like" his writing. After Mr. Craig granted a continuance of the hearing plaintiff called Mr. Craig on the telephone, admitted that he had not told the truth, that he had done a grievous wrong to the company for which he was sorry, and said he would throw himself on Mr. Craig's mercy. Mr. Craig then related the substance of the telephone conversation to the union representatives, and discharged plaintiff. Mr. Craig knew and understood that the reason for discharging Roberts was that he had falsified company records. Mr. Craig apparently was confused at the first trial as to whether the chart with the counterfeit line was the one taken off by the refrigeration man or the one handed to the foreman, but this was an immaterial matter. The record does not confirm the suggestion that Mr. Craig was confused in the respects charged, either at the time he wrote the service letter or at the time he testified at the second trial.

The complaint that defendant's counsel in final argument conceded that defendant and Mr. Craig did not know who had falsified the one chart or destroyed the other, is equally lacking in merit. There is no such concession in counsel's argument, in the sense in which it is urged. In the course of the argument counsel stated that *he* did not know what happened; that *he* was not there, which obviously was true, but he continued by suggesting that "nobody was there but Harry Roberts," and proceeded to marshal and assemble the circumstantial evidence which led to the conclusion that it was plaintiff who destroyed

the unfavorable chart and substituted the concededly "phony" chart. There is no basis for this complaint.

Nor was the ground stated in Paragraph 19 a sufficient basis for the action of the trial court, under the record in this case. The complaint is improperly admitting evidence "in chief of defendant" concerning the relationship between plaintiff and his attorney or other attorneys, but nowhere in defendant's case in chief was a single word said by any witness with reference to this relationship. The only place in the record where any such evidence is to be found is in the cross-examination of plaintiff, during which counsel for defendant was permitted to interrogate plaintiff with reference to and read to the jury a paragraph from a letter written by plaintiff to his attorney, discharging him as his counsel, in which plaintiff accused "every lawyer who has come into this case on either side" with having joined up with a mob made up of the management of Emerson and members of his union to make him "a smear goat" for the purpose of getting the company out of a bad situation with the government with reference to their defense contracts. This evidence was admitted in this background: Plaintiff thought that a great many employees at Emerson were unfriendly to him; that "everybody" was unfriendly. Plaintiff filed a written complaint charging that certain named employees had discriminated against him for 25 years (a statement retracted by plaintiff at the trial as untrue). Plaintiff had "a lot of cat and dog trouble" with two other employees for about a year. Plaintiff believed these men "would like to fire" him an were "setting booby traps" for him. He considered that the day shift men were "playing their cards against" him "all they could." He felt that he was resented all over the plant because of his low badge number. He named three other employees who were "after" him. He admitted sending the company a letter stating that he was "the victim of a lying conspiracy," and testified that he was "charging that right now and that's why

I am in court," but when asked to name any of the parties to the alleged conspiracy, declined to do so. At this point counsel for defendant asked plaintiff if he had not charged that while confined to his home with pneumonia, unable to defend himself, plaintiff had been framed by a mob consisting of employees of the company and members of the union, which made him "a smear goat." Plaintiff admitted making a similar statement in a letter and *asked that the letter be read,* stating "I love the truth, but I love the whole truth." Plaintiff's counsel, however, objected to the introduction of the letter on the ground that it was a confidential communication and was immaterial. The court permitted the last three paragraphs of the letter to be read to the jury, as follows:

"I charge; While I was confined at home with pneumona (sic) and completly (sic) unable to defend my self. I was framed by a mob, consisting of members of the Emerson Co. and the union which made me a smear goat for the purpous (sic) of getting the company out of a bad situation (sic) with the government. In connections with their defence (sic) contracts.

"Or it could have been the case of lower management getting themselves out of a bad situation (sic) with top management.

"I further charge every lawer (sic) who has come into this case on eather (sic) side has joined up with this mob."

Over objection counsel for defendant was permitted to ask plaintiff to identify the members of the mob, which plaintiff failed to do, and to ask if plaintiff still charged every lawyer who had come into this case on either side with having joined the mob to smear him. Plaintiff answered that apparently they had; that was his belief on the day of trial. (Plaintiff had three different lawyers at various times. His last lawyer was permitted to withdraw in this Court, after plaintiff filed a lawsuit against him for $1,000,000 actual and $1,000,000 punitive damages.) Confronted with con-

tradictory testimony in his deposition, plaintiff's excuse was that he had been misled, and he testified that he had charged his lawyer with misleading him. Plaintiff further testified that Mr. Craig had always treated him fairly and was "an eighteen carat gentleman," until counsel for defendant "got [his] puppet strings on" Mr. Craig.

While the relationship between plaintiff and his lawyers and counsel for defendant, strictly speaking, was immaterial to the question whether the service letter truly stated the cause for plaintiff's discharge, the cross-examination in question was not prejudicial, inflammatory or improper. Plaintiff's lack of harmony and inability to have a normal relationship with his coemployees, superiors and attorneys; his suspicious and defensive attitude with respect to his associates, which approached a persecution complex, and his unsubstantiated charges that he was the victim of a "lying conspiracy" and that he had been discharged as a result of having been framed by a mob, including the lawyers, were proper subjects of cross-examination. Such evidence would be of value to a jury in assessing and evaluating plaintiff's essential soundness, credibility and reliability as a witness. Generally, anything "having a legitimate tendency to throw light on the accuracy, truthfulness, and sincerity of a witness, including the surrounding facts and circumstances, is proper to be shown and considered in determining the credit to be accorded" the testimony of a witness. 98 C.J.S. Witnesses § 460, p. 323. Wide latitude is allowed in the cross-examination of a party to an action who offers himself as a witness. Hall v. Clark, Mo.Sup., 298 S.W.2d 344, 350, and the scope and extent of such cross-examination in a civil case is discretionary with the trial court. Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, and cases cited, l.c. 682. No abuse of that discretion appears in this case.

The order granting a new trial is reversed, and the cause is remanded with direc-

tions to reinstate the verdict and judgment for defendant.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.