STATE of Missouri,
Plaintiff-Respondent,

v.

Shirley Elizabeth ALLEN,
Defendant-Appellant.

No. 13902.

Missouri Court of Appeals,
Southern District,

Division Two.

July 21, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 13, 1986.

William L. Webster, Atty. Gen., Lee A. Bonine, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David Robards, Joplin, for defendant-appellant.

PREWITT, Chief Judge.

Defendant was charged with capital murder in St. Charles County. She was accused of killing her husband, Lloyd Allen, "by poisoning him with ethylene glycol between March, 1982, and November 1, 1982". Venue was changed to Phelps County. Following jury trial defendant was convicted and sentenced to life imprisonment without eligibility for probation or parole until she had served fifty years. Defendant appeals.

Defendant's first point states that the trial court erred in calling, at the state's request, Norma Hawkins, the defendant's daughter, as a court's witness, "thus permitting her, in effect, to be cross-examined by the state and impeached by the state". Defendant's point states that the court's calling the witness was erroneous, "for the reasons that (a) the state did not, as a predicate, satisfactorily show why it could not vouch for the credibility of the witness, and (b) the trial court's use of discretion to call a court's witness is limited to those situations where otherwise a miscarriage of justice would result, and it was not, and has not been, shown that would be the case."

In *State v. Davis,* 566 S.W.2d 437 (Mo. banc 1978), the authority of a trial

court to call a court's witness was discussed. The per curiam opinion approved that procedure, subject to certain limitations. Two judges fully concurred in the opinion, and two dissenters apparently concurred in the portion of the opinion regarding the calling of court's witnesses, but dissented from the portion of the opinion which concluded that the conviction should be reversed. Because a majority of the judges agreed with the portion of the opinion on court witnesses, we conclude that *Davis* is precedential authority on that issue. Its reasoning on court's witnesses was followed in *State v. Swingler*, 632 S.W.2d 267, 271 (Mo.App.1982).

*Davis* states, 566 S.W.2d at 448:

Based upon well-recognized authorities, we believe that (1) the trial court has discretion in a criminal case to call a witness as its own, (2) the practice should be sparingly used, since it is not a desirable one, (3) the practice should be restricted to cases where otherwise there may be a miscarriage of justice and (4) before a witness is called by the court a proper foundation be laid which would consist of the reasons why the party desiring the witness to testify cannot vouch for his veracity and a showing that the testimony relates to the issues in the cause.[1]

Defendant and Lloyd Allen were married on September 25, 1981. There was evidence that Norma Hawkins, a daughter of defendant by a previous marriage, had initially told authorities shortly after Lloyd Allen's death, that defendant had murdered her husband. Norma Hawkins said that she had seen her mother mix antifreeze with beer and give it to Lloyd Allen. Ethylene glycol is an ingredient found in antifreeze and an autopsy established that ethylene glycol was the cause of Lloyd Allen's death.

When interviewed by law enforcement personnel, Norma Hawkins said that on several occasions she saw defendant give Lloyd Allen antifreeze in soft drinks and in small containers of "Nyquil". She stated that defendant had been doing this at least two months prior to Lloyd Allen's death. She testified as a witness for the state at a preliminary hearing held on November 22, 1982.

On June 7, 1983, defendant's counsel took Norma Hawkins' deposition. There, she testified she had not witnessed any such incidents, but that her testimony regarding Lloyd Allen's poisoning by her mother had been based on what she had been told by her sister, Paula. A jailer stated that Norma Hawkins had visited defendant in jail on at least four occasions from April through June 1983 and had received money from defendant. On July 22, 1983, a detective interviewed Norma Hawkins and she stated she had lied at the deposition because during a visit with her mother in jail, defendant had threatened to kill her if she did not change her story.

Previous to the commencement of trial, the state filed a motion asking the court to call Norma Hawkins as a witness. On January 25, 1984, the trial court held a hearing on the motion. Following the hearing, the trial judge noted that the court should be careful in calling a court's witness, but stated that he would sustain the state's motion and call Norma Hawkins as a witness "for the reason that the witness has given contradictory statements and contradictory testimony; for the reason that the witness is the daughter of the defendant; that the witness is the stepdaughter of the deceased; and that for some period of time prior to the death of the deceased, did live in the home; and that there could be a possible miscarriage of justice if this witness were not called as a Court's witness; and do not believe under

---

1. Apparently, calling a court's witness has been done sparingly and may be used less in the future. See § 491.074, RSMo Supp.1985, allowing for prior inconsistent statements to be substantive evidence in certain criminal matters. See also *Rowe v. Farmers Insurance Co.*, 699 S.W.2d 423 (Mo. banc 1985) (allows impeachment by prior inconsistent statement of a party's own witness and substantive use of prior inconsistent statements where the declarant is available for cross-examination in civil cases).

the circumstances that the State could vouch for the credibility of this witness."

Jury trial commenced on April 23, 1984. According to the record, the jurors were unaware that Norma Hawkins was called as a witness by the court. When she was called, no objection was then made. Although we tend to agree with the state that because no objection was made, this contention is not preserved for our review, see *State v. Freeman*, 667 S.W.2d 443, 447 (Mo.App.1984), *State v. Holt*, 659 S.W.2d 233, 235 (Mo.App.1983), because of its significance in determining if defendant received a fair trial, we nevertheless review this point.

■ The state contends that it could not vouch for Norma Hawkins' credibility because of the conflicting stories she had given. Because of the changes in her testimony and her relationship to the defendant, we agree that it was reasonable for the state to believe that it could not vouch for Norma Hawkins' credibility.

Had she not testified, a miscarriage of justice might have resulted. Before defendant was charged, Norma Hawkins contacted a police detective and asked him to come by the house where she, the defendant, and the decedent had lived. She told the officer that she had "the substance that Shirley—that Mom has been giving to Lloyd." The officer stated that he went there and received a wine bottle which contained antifreeze. Although there was other evidence of the poisoning from her sister Paula, Norma Hawkins' testimony regarding the wine bottle and her testimony corroborating that of her sister, if not presented, might have created a miscarriage of justice. We find no abuse of the trial court's discretion in calling Norma Hawkins as a court's witness. This point is denied.

Defendant contends in her second point that the trial court erred in allowing the state to ask a question of defendant regarding State Board of Nursing records.

During cross-examination of defendant the following occurred:

Q You stated you are a registered nurse?

A Yes.

Q When did you become a registered nurse?

A In 1971.

Q Under what name?

A Under a name of Goude.

Q Do you know a Darla Nichols?

A Darla Nichols?

Q Of the State Board of Nursing.

A No.

Q If she said she checked the records—

MR. KUELKER:—I object, Judge.

THE COURT: He may ask the question.

Q If she said she checked the State Board of Nursing records under the name—

MR. KUELKER:—Judge, I'd object to some hypothetical person that no one knows and isn't here if she says something he's testifying to it—

THE COURT: I overruled it, he may ask the question.

Q If Darla Nichols said that she checked the records of the State Board of Nursing under that name and some of your other married names and could not find any record that you were a registered nurse, would she be mistaken about that?

MR. KUELKER: I object to the conclusion.

THE COURT: I do not know whether that witness is going to testify or not. I do not know if that witness may be called as rebuttal.

A Pardon me?

Q Would she be mistaken about that?

A Could be, yes.

■ Defendant's point expands upon the trial objection. The point is set out below.[2] The reference to Darla Nichols

_____

2. The trial court erred in permitting the state to ask the defendant on cross-examination whether the recordkeeper of the State Board of Nursing would be mistaken if she could find no record that defendant was a registered nurse, which the defendant claimed to be, as the issue was techni-

was an apparent attempt by the state to have the jury believe that Darla Nichols had checked the records of the State Board of Nursing and could not find any record that defendant was a registered nurse. Neither Darla Nichols nor anyone else from the State Board of Nursing testified regarding whether defendant was a registered nurse. The question is improper as it is an obvious attempt to put hearsay before the jury. Whether defendant had an opinion regarding whether Darla Nichols was mistaken would also be irrelevant. However, we see no prejudice to the defendant in the particulars now claimed.

The jury was instructed that it must not assume as true any fact because it is included or suggested by question, and there is no indication in the record that the search of the records of the Board of Nursing by Darla Nichols, if there was such, was thereafter referred to by the state. The answer and the instructions given prevented any prejudice to defendant. Cf. *State v. Butler*, 549 S.W.2d 578, 580–581 (Mo.App.1977).

■ In defendant's remaining point she contends that the trial court erred in permitting the state to elicit from defendant's sister, Clara Watt, that she had allowed Paula Hawkins to talk with the prosecuting attorney only after he had agreed to waive the death penalty. Defendant acknowledges that this contention was not preserved in her motion for new trial and asks us to review it as "plain error". See Rules 29.11(d), 29.12(b), 30.20. Based on this contention, we find no error, plain or otherwise.

Paula Hawkins was called as a witness by the state. Apparently, Paula had initially refused to testify against her mother. During her direct examination, without objection, and also during cross-examination by defendant's attorney, Paula Hawkins was asked why she changed her mind and testified against her mother. Paula Hawkins said she did so because her mother and others had accused her and her niece, Tracy, of poisoning Lloyd Allen.

Paula Hawkins' credibility was questioned by defendant, and fear that defendant might get the death penalty may explain why she initially was reluctant to talk to law enforcement authorities, but changed her mind when the death penalty was waived. After Lloyd Allen died, Paula Hawkins was living with Clara Watt. Paula may have been influenced by Clara Watt not wanting her to testify against her mother while her mother was subject to the death penalty. It was reasonable for the jury to consider this in assessing Paula Hawkins' credibility.

"Generally, anything 'having a legitimate tendency to throw light on the accuracy, truthfulness, and sincerity of a witness, including the surrounding facts and circumstances, is proper to be shown and considered in determining the credit to be accorded' the testimony of a witness." *Roberts v. Emerson Electric Manufacturing Co.*, 362 S.W.2d 579, 584 (Mo.1962). There was no error in explaining the delay in Paula Hawkins' cooperating with the law enforcement authorities. Defendant's third point is denied.

The judgment is affirmed.

MAUS, J., KEET, Senior Judge, and DORMAN L. STEELMAN, Special Judge, concur.

cally, purely collateral, and the implication in the way the question was asked was that the defendant had misrepresented herself in that regard so as to make her guilty by doing so of a crime, and the mere asking of the question was prejudicial to the defendant in the extreme because it carried the suggestion to the jury that with regard to the field of medicine she was a charlatan thus undercutting her claim that she had done what she could do to provide her ailing husband with proper medical treatment.