**Robert Earl PROSPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14-89-00527-CR.**

Court of Appeals of Texas, Houston (14th Dist.).

March 29, 1990.

Discretionary Review Refused June 27, 1990.

James B. Hicks, Waller, for appellant.

David S. Barron, Anderson, for appellee.

Before ROBERTSON, DRAUGHN and JACKSON B. SMITH (Retired, Sitting by Designation), JJ.

## OPINION

ROBERTSON, Justice.

At trial, the jury found appellant guilty of murder and assessed punishment at confinement for 99 years. On appeal, appellant contends the trial court erred: (1) in failing to dismiss the jury because the prosecutor peremptorily struck all black prospective jurors; (2) in admitting a tape recording made by the deceased's daughter at the time of the murder; and (3) in refusing to declare a mistrial following certain comments made by the prosecutor. Finding no error in the trial court's actions, we affirm.

A detailed recitation of the evidence is unnecessary to a disposition of appellant's points of error. It is sufficient to note that appellant was found guilty of shooting and killing his wife of some two years with a shotgun while they were in their home.

■ In his first point of error, appellant contends the trial court erred in failing to dismiss the jury because of "the discriminatory practices used by the district attorney to remove all black individuals from the voir dire panel." After the jury was seated, appellant moved to have the jury dismissed. The trial court then held a hearing on appellant's *Batson* motion. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant testified he was black and that no blacks were on the jury to try his case. He then rested. Appellant's counsel then began reciting certain facts so that the record would "reflect who was called up and who was not." The prosecutor, on the record, opined that if counsel is testifying, "he probably needs to be sworn." Appellant's counsel declined, stating he was "just giving the Court what he asked for." Appellant's counsel then made several statements of what *"appeared* [to him] *to be"* the facts as they occurred during voir dire.[1]

---

1. We deplore a record such as this that so loosely presents the serious contention of purposeful exclusion of potential jurors in violation of *Batson*. Unsworn statements by counsel are not

The prosecutor was then sworn. He testified concerning the voir dire, the challenges for cause, and the peremptory strikes. He stated that following the court's excusal of prospective jurors, thirty-nine persons remained on the panel from which the jury was to be selected, of which seven were black. Of these seven, the trial court excused four for cause, leaving three black persons on the panel. The prosecutor testified that he peremptorily struck two of those three. One of the two jurors, juror number nineteen (Belizare), was stricken because "being he was a TDC [Texas Department of Corrections] guard he was unsure that he could assess a life sentence in a case, or consider assessing a life sentence based on both religious scruples and based upon the fact that he is a TDC guard and he might encounter Mr. Prosper sometime during the system." The second prospective black juror, juror number thirty-four (Norris Lowery), was stricken because he had "worked with [the defendant] for five years and he considered himself a friend," and "for the fact that he seemed not to possess the necessary intelligence to even respond to the lawyers' and Judge's questions." These two peremptory strikes appear to have left one black prospective juror on the panel that the prosecutor testified was juror number twenty-nine (Willie Nickerson). Although the record is unclear on this point, there is no question the prosecutor struck two of the three black prospective jurors.

Following the prosecutor's testimony concerning his use of peremptory strikes to remove two of the black members of the jury pool, the judge asked defense counsel if he had any rebuttal, to which defense counsel answered, "No, I don't, Your Honor." It is worthy to note appellant not only

failed to dispute the testimony of the prosecutor at the time of his *Batson* motion, but has also failed to make the parties' jury strike lists a part of the appellate record.

Following a trial on the merits, appellant filed a motion for a new trial. At the hearing on this motion, appellant again elicited testimony from the prosecutor concerning his peremptory challenges.[2] Appellant's counsel implied that the prosecutor had exercised a third peremptory strike on a black juror, Nickerson, which implication the prosecutor denied. Again, counsel for appellant did not testify or present any other evidence to support his implication and, again, he did not make the jury lists a part of the record on appeal.

In his brief, appellant challenges the prosecutor's use of peremptory challenges to remove potential black jurors from the venire panel. He first questions the basis given by the prosecutor for his peremptory strike of Belizare. The record shows, however, that when Belizare responded that he could not sentence someone to life in prison "due to my professional job," he was requested to come to the bench for questioning outside the hearing of the panel. Questioning by the attorneys for both sides revealed that the prospective juror was not subject to a challenge for cause, but the answers given by Belizare fully support the reason given by the prosecutor for the exercise of his peremptory challenge.

Also in his brief, appellant states that juror twenty-nine (Willie Nickerson) was peremptorily stricken by the prosecutor after asking *her* only one question. The cite to the record, however, shows that the Nickerson being questioned was a man. The prosecutor, at the hearing on appellant's motion for a new trial, testified that

---

proper evidence. *Price v. State,* 726 S.W.2d 611, 613 (Tex.App.—Houston [14th Dist.] 1987, no pet.). The trial court should avoid even the possibility that an appellate court might consider such statements as evidence by requiring counsel to be sworn before making such statements.

2. We seriously doubt that the defendant, in post-*Batson* cases, is able to utilize a motion for new trial to develop a record on the *Batson* challenge. To challenge a jury on *Batson* grounds

in post-*Batson* trials, a defendant must object "after the composition of the jury is made known but *before* the jury is sworn and the venire panel is discharged." *Henry v. State,* 729 S.W.2d 732, 737 (Tex.Crim.App.1987) (emphasis in original). Because of this required procedural step, it is illogical to believe that the defendant can, in post-*Batson* trials, wait until a hearing on a motion for new trial to either make a record or supplement the record he timely attempted to make.

juror twenty-nine (Nickerson) was excused by the trial court for cause. The record supports this testimony because appellant's counsel appears to have individually questioned each juror, calling each by name. Nickerson's name, however, was never called. Appellant attempts to support his contention that Nickerson was peremptorily stricken by the state by pointing to the following question which his attorney asked the prosecutor at the hearing on appellant's motion for new trial: *"If I was to state* to you my list shows she is not for cause, and my chart shows she's not for cause, and the District Clerk's shows she's not for cause and also no other reason, would you agree with me that that would have been a strike of your own?"* (emphasis supplied). The prosecutor, however, again responded that Nickerson was not peremptorily stricken. Therefore, it appears that appellant has made a serious assertion in his brief of prosecutorial misconduct that is without factual support in the record.

Next, appellant questions the reason the prosecutor gave for his peremptory strike of Norris Lowery because Lowery "never admitted having considered himself to be a friend of" appellant. This position is directly contrary to Lowery's testimony wherein he stated "He [appellant] is a friend of mine." Further, the record shows that of the twelve questions asked of Lowery, his answers to six were "inaudible," and one question received no response at all. Also, the record shows that Lowery first stated he could not consider life in prison as a punishment, but later stated he could assess such a punishment. Appellant's attempt to show that the prosecutor's stated reason for exercising a peremptory strike against Lowery was a pretext is without merit. The record shows that the prosecutor gave racially neutral reasons for peremptorily dismissing two black venire members from the panel. Accordingly, we overrule appellant's first point of error.

■ In his second point of error, appellant contends the trial court erred in admitting a sound recording into evidence without the essential predicate being laid. One of the deceased's daughters, Yolanda, had, some two weeks prior to the night appellant killed her mother, tape recorded an argument between appellant and the deceased so her grandmother could hear it. On the night of the murder, another argument between appellant and the deceased began and Yolanda again got her tape recorder and turned it on, capturing a portion of the argument as well as the actual shooting. At trial, Yolanda identified the tape and identified the two voices recorded thereon as those of her mother and appellant.

In argument before the trial court concerning the admissibility of the tape, appellant specifically waived all objections to the necessary predicate except as to "preservation of the tape." In his brief, appellant argues that without evidence concerning "the preservation of the sound recording from the time of its making to the time it was played for the jury," the tape was inadmissible. While it appears to us that under the facts of this case Yolanda's testimony provided sufficient predicate, we note that subsequent testimony by both Officer Jackson and Officer Jones shows that the police officers immediately took possession of the tape when they appeared on the scene and kept it continually in their possession until it was delivered to the prosecutor at trial. Thus, even if a proper predicate was not proven at the time the tape was admitted into evidence, later testimony provided that element which appellant claimed was missing. We overrule appellant's second point of error.

■ In his third point of error appellant contends the trial judge erred in refusing to declare a mistrial based on the following cross-examination of the appellant by the prosecutor:

Q. Do you remember an argument you had with your wife that was recorded prior to this argument?

A. How long?

Q. Oh, a couple of weeks. Have you heard that tape?

A. (No response.)

Q. Mr. Hicks has played that tape for you, hasn't he, the tape of you and your wife arguing that's on after this tape?

Mr. Hicks: Your Honor, I object to that. Could I approach the Bench?

The jury was then excused and a lengthy discussion was had, after which the trial judge agreed to instruct the jury to disregard the last two questions asked by the prosecutor. When the jury returned the trial judge so instructed the jury. Appellant then moved for a mistrial.

The hearing in the absence of the jury revealed that Yolanda had tape recorded an argument between appellant and the deceased a week or so earlier. On the night her mother was killed, Yolanda recorded another argument over the one previously recorded, so that following the sound of the shooting, there was a "blank spot" in the tape followed by the recorded prior argument. We fail to discern any reason the recording of the prior argument would not have been admissible. Apparently, the trial court was of the same opinion because when he ruled that he would not let the tape in, he stated that the jury would have to be provided a transcript and since there was not one, "it would confuse them, I'm afraid," so "your objection is sustained." It appears, therefore, that the instruction was not called for and the refusal to declare a mistrial was proper. We overrule appellant's third point of error.

We affirm the judgment of the trial court.