**Brenda POWERS, Appellant,**

v.

**Paul PALACIOS, Appellee.**

**No. 13–89–271–CV.**

Court of Appeals of Texas, Corpus Christi.

June 29, 1990.

Rehearing Overruled Aug. 31, 1990.

Andrew J. Lehrman, Sorrell, Anderson & Lehrman, Bradford M. Condit, Corpus Christi, for appellant.

L. Nelson Hall, William R. Kendall, Jr., Kleberg & Head, Corpus Christi, for appellee.

## OPINION

SEERDEN, Justice.

Brenda Powers sued Paul Palacios, seeking damages for injuries, including loss of a finger, sustained when a pit bull dog kept at his residence attacked her while she was delivering mail. Following a jury trial, the trial court rendered a take-nothing judgment. We affirm the judgment of the trial court.

■ By her first point of error, Powers alleges that the trial court erred in protecting from discovery the investigative claim file of Palacios' insurance company. In order to properly dispose of this point, a brief chronology is necessary. The incident in question occurred on February 23, 1987. Powers' attorney sent a demand letter to Borden Insurance Company on November 19, 1987, and to the Chubb Group of Insurance Companies on November 20, 1987. During pre-trial discovery, Powers requested "[a]ll investigation reports, notes, memos and the entire claims file made by any insurance adjustor or other person regarding this incident." Palacios objected, arguing that these documents were protected by Tex.R.Civ.P.166b(3)(a) and 166b(3)(d), because these reports were prepared in anticipation of litigation, and requested a protective order which the trial court granted. Powers points out that four documents were specifically sought to be produced, but mentions only one, the statement of an eyewitness taken on December 17, 1987, in support of her argument that the protection of these documents from discovery prevented her from making a proper presentation of her case to the jury.

In *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 40–41 (Tex.1989), the Supreme Court set forth a two-prong analysis for determining whether a report was prepared in anticipation of litigation. First, an objective examination of the facts surrounding the investigation must be made and consideration should be given to outward manifestations which indicate litigation is imminent. Second, a subjective inquiry must be made to determine whether the party opposing discovery had a good

faith belief that litigation would ensue. Absent an abuse of discretion, the trial court's ruling will not be disturbed on appeal. *Id.* Here, Palacios' insurance companies were notified in November 1987 that unless they tendered their policy limits within fourteen days, a lawsuit would ensue. In *H.E.B. v. Williams,* 751 S.W.2d 554, 557 (Tex.App.—San Antonio 1988) (original proceeding), the attorney for the plaintiff sent H.E.B. a demand letter four days after the accident in question occurred, stating that suit would be filed if H.E.B. did not contact him. The court held that this letter was sufficient to find good cause to believe that suit would be filed, rendering the sought-after investigative documents privileged. We believe that the demand letter sent by Powers in this case was a sufficient outward manifestation to indicate the imminency of litigation and the good faith belief that litigation would ensue. We therefore overrule appellant's first point of error.

■ By her second point of error, appellant, who is black, alleges that the trial court erred in allowing Palacios to strike the only black venire person from the jury panel, in violation of her due process and equal protection rights under the United States Constitution. In support of her position, she relies on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which the Supreme Court held that the exclusion of black members of the jury venire in a criminal case when the defendant is black is violative of the Equal Protection Clause of the Fifth and Fourteenth Amendments if the defendant makes a prima facie case of purposeful discrimination[1] and the State cannot come forward with a racially neutral explanation for its actions. In *Edmonson v. Leesville Concrete Co., Inc.,* 895 F.2d 218, 219 (5th

Cir.1990) (on rehearing) (en banc) the Court held that civil litigants are not required to give reasons for peremptory challenges to prospective jurors even where the challenges were claimed to have been based on racial grounds. In rejecting the argument that *Batson* applies to civil lawsuits, the Court rationalized that the absence of state action precludes the application of *Batson* in civil cases and that the striking of a venire person because of fear that he may favor an opponent "neither demeans him nor calls into question the fairness of the civil justice system." *Id.* Recently, in *C.E.J. v. State,* 788 S.W.2d 849 (Tex.App.—Dallas 1990) the court extended the *Batson* application to a juvenile delinquency trial, stating that while it is classified as a civil proceeding, it is quasi-criminal in nature, and as such the juvenile is guaranteed all the constitutional rights which he would have as an adult in a criminal trial because the juvenile delinquency procedures seek to deprive him of his liberty. The most significant distinction between a juvenile delinquency trial and a suit between two private litigants is the presence of state action. Without it, there can be no deprivation of constitutional rights. *Edmonson,* 895 F.2d at 221–22. Because no state action exists in the present case, we hold that appellee was not required to offer an explanation which would have satisfied the "Batson test" when exercising his peremptory jury challenges. Point of error two is overruled.

■ By point of error number three, Powers contends that the court erred overruling her challenges of three jury panelists, Frances Trevino, Dianna Jones, and Carlos Valenzuela, because they stated during voir dire that they would have difficulty awarding damages. In support of this position, she relies on Tex.Gov't Code

1. The court in *Batson* explained that in order for a defendant to make a prima facie case of purposeful discrimination he must show that he is a member of a cognizable racial group, and in so doing he can rely on the fact that the peremptory challenge "permits those to discriminate who are of a mind to discriminate." He must then show that these facts and any other relevant circumstances raise an inference that the state excluded venireman from the petit jury on account of their race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722. Once he has done so, the burden shifts to the state to show reasons for its peremptory challenges which are racially neutral. *Id.* Considering the prosecutor's explanations and all other relevant circumstances, the court must then rule on whether the defendant proved purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1723.

Ann. § 62.105(4), which provides that bias or prejudice is a statutory ground for disqualification of a juror. Once bias or prejudice is established, the juror is disqualified as a matter of law. *Swap Shop v. Fortune,* 365 S.W.2d 151, 154 (Tex.1963); *Gum v. Schaefer,* 683 S.W.2d 803, 807 (Tex.App.—Corpus Christi 1984, no writ). In order to disqualify a juror it must appear that the state of mind of the juror leads to the natural inference that the juror will not act with impartiality. *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963).

During general questioning, Powers attorney asked if any panelist had a problem with awarding substantial damages in the case. Trevino responded, "I'm not sure of the amount. I mean, I don't know how you put the worth of a finger in things like that." Two other prospective jurors then stated that they felt the same way. The trial court then intervened:

Let me see if I can help. We have an awful lot of hands, and I don't mean to interrupt, ladies and gentlemen. The lawyers are not trying to commit you to any particular figure. Damages are going to be left up to you ... I have seen there are problems with damages. People are going to have problems with damages, and I'm seeing that you are, and you're not unusual. I see juries in here every day, but can each of you, if you have a problem—could each of you give full and fair compensation based upon what you think it should be that may help, *full and fair compensation ...?* And its really up to you."

Trevino: I thought it was their decision, and what he said, well, that's what would be awarded.

The court: No. They will suggest—

Trevino: See, that's what I didn't understand.

During individual voir dire, the court asked Trevino, "[B]ased on how you feel, are you leaning one way or the other?" to which she responded "No, because I don't know. What I mean, I still need the evidence on what they're going to say and what they have to say."

Jones similarly stated that she had a problem arriving at a value to place on something like disfigurement. She stated, however, that this would not affect her ability to be fair and impartial to the plaintiff and that she "wouldn't have a problem with the amount of damages, you know, whatever would be —— recommended."

Valenzuela stated that he would have difficulty in awarding several hundred thousand dollars for losing part of a finger. The following discussion then transpired between Valenzuela and Power's attorney:

Q. ... [D]o you feel that under no circumstances could you even consider ever awarding damages like that?

A. Oh, no—well, I tell you, I would have a hard time with it, probably for a—that part of it for losing her finger. I don't know, you know about the other things that you're asking damages for ...

Q. ... [E]verything we ask, the pain and suffering, the medical bills and so forth is a result from losing the finger. Are you going to be able to award what you feel are fair damages, or do you feel here's a certain amount of money in your mind, no matter what you hear, you couldn't do it?

A. I'm sure I would be able to award what I feel are fair damages.

If the evidence conclusively establishes that a jury panelist had a state of mind in favor of or against a litigant or type of suit so that the panelist would not act with impartiality or prejudice in the cause, an appellate court must hold that the panelist was disqualified as a matter of law; however, whenever the evidence does not conclusively establish the panelist's disqualification as a matter of law, an appellate court must consider the evidence in a light most favorable to the trial court's ruling. *Gum,* 683 S.W.2d at 807. A review of the record reflects that no bias or prejudice existed in these jurors as a matter of law: all three panelists stated that they could hear all of the evidence presented and be fair and impartial. We therefore conclude that the trial court did not abuse its discretion in overruling appellant's challenges for cause. The point is overruled.

■ Appellant's point of error number four complains of the refusal of the trial court to submit her proposed Question 4 to the jury.

The evidence showed that appellant was attacked by a dog which was kept at appellee's residence. The dog was of a breed commonly known as a pit bull. Appellant presented expert testimony that these dogs have a savage and vicious nature and are dangerous to humans.

Appellant's requested Special Issue 4 would have inquired of the jury:

> Did Defendant Paul Palacios allow, either by express consent or implied consent, Jessie Palacios (the dog's owner) to have on Paul Palacios' premises a vicious animal on Feb. 23, 1987, the day of the attack.

Appellant correctly cites *Marshall v. Ranne*, 511 S.W.2d 255 (Tex.1974) which is the leading Texas case relating to the law of wild and vicious animals. It holds that suits for damages caused by vicious animals should be governed by the law of strict liability. It also expressly adopts as the correct rule the Restatement (Second) of Torts, §§ 507, 509 (1938).

These sections provide a distinction between the strict liability of a possessor of a "wild animal" (§ 507) and an "abnormally dangerous domestic animal" (§ 509) by providing that the possessor of the latter must have "reason to know" that the animal has dangerous propensities abnormal to its class, while the only condition for imposing liability on the possessor of a "wild animal" is that the damage result from a dangerous propensity characteristic of wild animals of its class.

Appellant's proposed Question 4, and her argument in support thereof presupposes that the pit bull is a wild animal. The court refused to submit the request, but submitted Question 5, which inquired whether appellee had reason to know that the dog had dangerous propensities abnormal to its class. This question is consistent with the *Marshall* rule on abnormally dangerous domestic animals. The jury answered Question 5 "No."

We have been cited no cases differentiating between wild and domestic animals. Black's Law Dictionary, contains these definitions:

> *Domestic animals.* Such as are habituated to live in or about the habitations of men, or such as contribute to the support of a family.
> *Wild animals.* Animals of an untamable disposition; animals in a state of nature.

BLACK'S LAW DICTIONARY, 434, 1433 (5th ed.1979).

We hold that the trial court was correct in refusing to submit to the jury the question based on appellant's theory that the dog in question was a wild animal. Point of error four is overruled.

The judgment of the trial court is affirmed.

UTTER, J., not participating.