**Diedere LOTT, Individually in Behalf of the Estate of Anthony White, Deceased, as Next Friend for Jimmy Lott, a Minor; as Next Friend for Milton Lott, a Minor; Faytrice Smith and Charles Collins, Appellants,**

v.

**CITY OF FORT WORTH and Ron Sanders, Appellees.**

No. 2–91–078–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 20, 1992.

Lowell E. Dushman, Dushman & Friedman, P.C., J. Stewart Bass, The Dent Law Firm, Fort Worth, for appellants.

Wade Adkins, City Atty., Theordore P. Gorski, Jr., Asst. City Atty., Fort Worth, for appellees.

Ron Sanders, pro se.

Before WEAVER, C.J., and FARRIS and LATTIMORE, JJ.

## OPINION

WEAVER, Chief Justice.

Diedere Lott, Faytrice Smith and Charles Collins appeal from a take-nothing judgment in favor of the City of Fort Worth and Ron Sanders. The appellants bring nine points of error. Under points one through six, they claim that the jury's finding of no negligence on the part of either appellee was not legally or factually supported by the evidence. Under points seven, eight and nine, they assert error of the trial court in overruling their objections to the striking by the defendants of all black members of the jury venire.

We reverse and remand for a new trial.

The appellants in this premises liability lawsuit sued the City of Fort Worth ("City") and Ron Sanders ("Sanders") following the drowning death of Anthony White ("Anthony"), aged 7, in a water filled excavation pit on property owned by Sanders. Survival and wrongful death claims were brought by Anthony's mother, Diedere Lott, individually, on behalf of Anthony's estate, and as next friend for Anthony's surviving brothers, Milton Lott and Jimmy Lott; by Anthony's grandmother, Faytrice Smith; and by Anthony's father, Charles Collins ("appellants"). The jury, in an eleven to one verdict, found that neither the City nor Sanders was negligent in Anthony's drowning death. In accordance with the jury's verdict, the trial court entered a take-nothing judgment in favor of the City and Sanders.

Appellants complain under points of error seven, eight and nine that the trial court erred in overruling their objections to the defendants' exercise of peremptory challenges. Specifically, appellants urge that the trial court committed reversible error in not granting their Motion for Mistrial, Motion to Strike Jury Panel, and Motion for New Trial. Appellants assert that

their constitutional rights to a fair and impartial jury and to due process of law were violated. Appellants also assert that the prospective juror's constitutional rights to equal protection of the law were violated.

Three defendants were involved in the jury selection process—the City, Sanders, and Wani, Apel & Associates ("Wani") which was nonsuited during the trial ("defendants"). The trial court allowed the three defendants a combined total of six peremptory challenges, and the defendants made a joint decision as to how the six strikes would be exercised. The defendants used two of the six peremptory challenges to strike all of the black venirepersons. Appellants, who are black, objected on the basis that their constitutional rights had been violated by the defendants' allegedly discriminatory use of peremptory challenges to exclude the only two black venirepersons from the jury panel.

■ The first issue before the trial court was whether *Batson*[1] applied in the civil context. After this lawsuit was tried, but while it was pending on appeal, both the United States Supreme Court and the Texas Supreme Court determined that the use of peremptory challenges to discriminate against potential jurors in a civil case because of their race is a violation of the excluded juror's right to equal protection, a right that may be asserted by the party not exercising the peremptory challenges. *Edmonson v. Leesville Concrete Co., Inc.,* — U.S. —, —, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660, 680 (1991); *Powers v. Palacios,* 813 S.W.2d 489, 491 (Tex.1991) (per curiam). We find that *Edmonson* and *Powers* are applicable to the case before us because it was pending on direct review at the time *Edmonson* and *Powers* were decided. The United States Supreme Court has held that *Batson* applied to defendants whose trials occurred before the *Batson* decision, but whose appeals were either on direct review or not yet "final" by the date of the *Batson* decision. *Griffith v. Kentucky,* 479 U.S. 314, 321, 328, 107 S.Ct. 708,

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.    1712, 90 L.Ed.2d 69 (1986).

712, 716, 93 L.Ed.2d 649, 657–58, 661 (1987). *See also Whitsey v. State,* 796 S.W.2d 707, 710 (Tex.Crim.App.1989) in which the Texas Court of Criminal Appeals applied *Batson* retroactively in a criminal case pending on direct review at the time *Batson* was decided. We extend the *Griffith* and *Whitsey* decisions to include civil cases.

█ Appellants assert, on appeal, that the trial court overruled their *Batson* challenge because the trial court relied on a court of appeals' decision holding that *Batson* did not extend to civil cases. That case was reversed after the case at bar was tried. *See Powers v. Palacios,* 794 S.W.2d 493, 495 (Tex.App.—Corpus Christi 1990), *rev'd per curiam,* 813 S.W.2d 489 (Tex. 1991).[2] The trial judge and parties discussed whether *Batson* extended to civil cases, and the trial judge read the *Powers* lower appellate court decision during the recess. At the conclusion of the hearing, the trial court gave no reason for overruling the appellants' objection. Without findings of fact and conclusions of law, we cannot determine whether the trial judge overruled appellants' objection because he relied on the *Powers* court of appeals' decision or because he believed that the defendants' reasons for striking the black venirepersons were not racially motivated. The *Powers* lower appellate court holding was that a civil litigant exercising allegedly discriminatory peremptory challenges based on race was not required to offer an explanation that would have satisfied the *"Batson* test." *Powers,* 794 S.W.2d at 495. The trial court in the instant case, however, did not follow that holding even though he reviewed the Corpus Christi Court of Appeals' decision. Instead, the trial court required the defendants to offer race-neutral explanations for striking the black venirepersons. We find that the appellants were not harmed by the trial court's review of the *Powers* court of appeals' decision because appellants were afforded a full hearing on their objection.

Although neither party addressed it in their briefs, we must next consider the appropriate procedures utilized by the trial courts to implement the *Edmonson* and *Powers* decisions. In *Edmonson,* the United States Supreme Court adopted the *Batson* approach in determining whether peremptory challenges in a civil lawsuit were exercised for racially discriminatory reasons. *Edmonson,* —— U.S. at ——, 111 S.Ct. at 2088, 114 L.Ed.2d at 680. The evidentiary rules for making this determination were left to the states to develop. *Id.* at ——, 111 S.Ct. at 2089, 114 L.Ed.2d at 680. The Texas Supreme Court also held that civil litigants cannot exercise peremptory challenges for racially motivated reasons, but did not offer any guidance to the lower courts as to how to enforce its holding. *Powers v. Palacios,* 813 S.W.2d at 491. We are cognizant of the fact that after the *Batson* decision, the Texas Code of Criminal Procedure was amended to incorporate the *Batson* holding. TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989). We are not aware of any similar proposal to amend the Texas Rules of Civil Procedure. Therefore, we look to the criminal jurisprudence of our state for guidance.[3] *See Pierson v. Noon,* 814 S.W.2d 506, 507–08 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

█ A *Batson* criminal hearing is an "evidentiary hearing," held on the record and in open court, with the judge serving as the "fact-finder." *Salazar v. State,* 795 S.W.2d 187, 192–93 (Tex.Crim.App.1990); *Tompkins v. State,* 774 S.W.2d 195, 201–02 (Tex.Crim.App.1987), *aff'd per curiam,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). It is an "adversary proceeding" with clearly identified burdens. *Keeton v. State,* 749 S.W.2d 861, 871 n. 1 (Tex.Crim.

2. The *Powers* appellate court decision was based upon the Fifth Circuit decision in *Edmonson,* which was also reversed after Lott's case was tried. *See Edmonson v. Leesville Concrete Co., Inc.,* 895 F.2d 218, 221–22 (5th Cir.1990), *rev'd,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

3. For the sake of clarity, we will continue to address this as a *Batson* question, even though, to be technically correct, it would be considered an *Edmonson* question because the issue arose in a civil lawsuit.

App.1988) (Teague, J., concurring). Thus, the usual procedural and evidentiary rules apply. *Shields v. State*, 820 S.W.2d 831, 832 (Tex.App.—Waco 1991, no pet.).

■ Batson and its progeny require that the complaining party must establish a prima facie case of discrimination. That is, the complaining party must present evidence that gives rise to a rebuttable presumption of racial discrimination by the striking party in the exercise of its peremptory challenges. If the complaining party carries that burden, then the burden shifts to the striking party to rebut the presumption by a racially neutral explanation for each peremptory challenge exercised against a minority venireperson. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; *Keeton*, 749 S.W.2d at 867–68.

■ A prima facie case is established by a suspect pattern of strikes. The Texas Court of Criminal Appeals has held that a suspect pattern is established where "the State has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of peremptories against the group." *Dewberry v. State*, 776 S.W.2d 589, 591 (Tex. Crim.App.1989). Appellants made a prima facie showing of discrimination by stating, without contradiction, that they were black and that the defendants struck all of the black venirepersons. *See Jones v. State*, 795 S.W.2d 32, 34 (Tex.App.—Houston [1st Dist.] 1990, no pet.). The City and Sanders complain on appeal that the appellants did not meet their burden on the prima facie case; however, where the opposing party has done everything that would be required of him if the movant had properly made out a prima facie case, whether the movant actually did so is no longer relevant. *Reich–Bacot v. State*, 789 S.W.2d 401, 403 (Tex.App.—Dallas 1990, pet. dism'd as improvidently granted). *Cf. Aguilar v. State*, 826 S.W.2d 760, 763 (Tex.App.—Fort Worth 1992, pet. ref'd per curiam). We find that appellants met their burden in making a prima facie showing of discrimination.

■ The trial court then required the defendants to come forward with reasons for those peremptory challenges. Defendants' attorney, who was not under oath, stated reasons on the record. We are not aware of, nor have we been cited to, any case or statute requiring that the neutral explanation be given under oath. We recognize that unsworn statements by counsel are not proper evidence; however, if "nonevidence" is "introduced" and considered by the court without objection, it then becomes "evidence." *Jones*, 795 S.W.2d at 33–34; *Prosper v. State*, 788 S.W.2d 625, 626 n. 1 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Appellants did not object to defendants' unsworn statements, and did not attempt to cross-examine defendants' attorney or offer any rebuttal evidence.

■ At the conclusion of the *Batson* hearing, the trial court must determine whether the party gave a racially neutral explanation for each of the questioned strikes and, if so, whether each explanation was truly race-neutral or merely a pretext for a racially motivated strike. *Williams v. State*, 804 S.W.2d 95, 106 (Tex.Crim. App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). The trial court's decision on the ultimate question of discriminatory intent is to be accorded great deference on appeal. *Hernandez v. New York*, —— U.S. ——, ——, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 408–09 (1991). In the case before us, the trial court overruled the appellants' objection without reducing his findings of fact and conclusions of law to writing or stating them on the record. In the criminal context, such a ruling has been held to be an implied finding that none of the peremptory challenges at issue were exercised on the basis of the venirepersons' race. *Martinez v. State*, 824 S.W.2d 724, 726 (Tex.App.—Fort Worth 1992, pet. ref'd.). We so find here.

■ Appellate review of *Batson* issues follows the "clearly erroneous" standard to determine whether the trial judge's findings of fact are adequately supported by the record. *Salazar v. State*, 818 S.W.2d 405, 408 (Tex.Crim.App.1991); *Whitsey*, 796 S.W.2d at 726. In so doing, the reviewing court must consider the evi-

dence in the light most favorable to the trial judge's rulings. *Salazar*, 818 S.W.2d at 408; *Keeton*, 749 S.W.2d at 870. We review the record in its entirety by considering the voir dire process including the racial constitution of the venire and the defendants' neutral explanations to determine if the trial court's ruling was clearly erroneous. *Whitsey*, 796 S.W.2d at 726. In our review, we will consider the nonexclusive list of factors that the Texas Court of Criminal Appeals has characterized as factors that weigh against the legitimacy of a race-neutral explanation. These factors are:

1. The reason given for the peremptory challenge is not related to the facts of the case;

2. [T]here was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. [A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 713–14. The existence of any one of these factors tends to show that the striking party's reasons are not actually supported by the record or are an impermissible pretext. *Id.*

The venire consisted of 32 persons, two of whom were black. The defendants used peremptory challenges to strike both of the black venirepersons, Lanette Murphy and Robert Tatum. The attorney for defendant Wani, Dauphin Whitehead, volunteered that those two venirepersons were struck upon his suggestion. Mr. Whitehead then explained his reasons for striking Mrs. Murphy and Mr. Tatum. The City concurred in the reasons given by Wani. Sanders, who appeared pro se, was silent at the hearing.

■ The City and Sanders assert on appeal that they did not exercise the allegedly discriminatory strikes; instead, they claim that their co-defendant, Wani, is the party to blame. The appellees seem to be arguing that since the jury strikes under consideration were exercised upon Wani's suggestion, any error committed by Wani should not encompass the City and Sanders. At the *Batson* hearing, however, the City and Sanders aligned themselves with their co-defendant, Wani, and expressly concurred in Wani's actions and explanations. The City's attorney represented to the trial court that "we were allowed six strikes for all of the defendants and this was a joint decision between all of us." Following the reasons given by Wani's attorney for the questioned strikes, the City's attorney volunteered "on behalf of the City of Fort Worth, we concur with what was just stated." There is nothing in the record to indicate that each defendant was allowed two peremptory challenges. To the contrary, the record reveals that the three defendants were allowed a total of six strikes to be exercised jointly. Moreover, even if the blame were to be apportioned, the harm done is the same. The Texas Supreme Court has held that racially motivated peremptory challenges violate the equal protection rights of the challenged juror. *Powers*, 813 S.W.2d at 491. Due to the fundamental nature of the right involved, it is irrelevant to ascertain which specific party exercised the peremptory challenge complained of when multiple defendants were allowed to concur in the exercise of jury strikes. The strikes exercised against both of the black venire members were, in effect, exercised by all three defendants jointly, and the City and Sanders cannot escape the consequences flowing from any improprieties in making such strikes.

■ The reason given by the defendants for striking Mrs. Murphy was that she knew the appellants' attorney and described him as a "personal friend." Acquaintance with counsel for a party is a sufficiently neutral explanation for utilizing a peremptory strike on a minority venireperson. *Cf. DeBlanc v. State*, 799

S.W.2d 701, 712 (Tex.Crim.App.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2912, 115 L.Ed.2d 1075, 1076 (1991) (attorney prosecuted venireperson's family member). There is nothing in the record to indicate that the explanation given for striking Mrs. Murphy was "merely a pretext." *Whitsey,* 796 S.W.2d at 713.

■ One reason given for striking Mr. Tatum was that his wife had an eye injury claim. Two of the venirepersons who ultimately served as jurors also had claims for personal injuries. Jurors one and four had personal injury claims stemming from automobile collisions. This suggests disparate treatment between the stricken black venirepersons and nonblacks who ultimately served on the jury. In their briefs to this court, the City and Sanders attempt to distinguish between personal injuries resulting from automobile accidents and other types of accidents. The Texas Court of Criminal Appeals has held that parties may argue on appeal anything that is in evidence from the voir dire and *Batson* hearing, even though those matters were not argued to the trial judge. *Young v. State,* 826 S.W.2d 141, 146 (Tex.Crim.App.1991). The record before us does not reflect how Mrs. Tatum sustained her eye injury, *i.e.,* whether it was in an automobile accident or otherwise. The information about Mrs. Tatum's eye injury was given in response to a general question to the entire venire as to whether any of the venirepersons, their families or close friends had claims for personal injuries. Mr. Tatum responded that "[m]y wife had an injury claim, eye injury." Mr. Tatum was not asked any specific questions about his wife's eye injury. Mr. Tatum also answered that he could set aside his wife's claim for an eye injury, and be a fair and impartial juror. Therefore, while the record suggests disparate treatment of black and nonblack venirepersons by the defendants, it does not reflect the distinction that appellees assert.

The second reason given for striking Mr. Tatum was that Mr. Tatum "didn't appear to be quite that swift." Counsel for Wani did not indicate why he thought Mr. Tatum "didn't appear to be quite that swift"; however, he told the trial court that if he had to choose between Mrs. Murphy and Mr. Tatum, he would rather take Mr. Tatum as a juror.

Mr. Tatum's answers during voir dire are essential to our determination. When asked to introduce himself, whether he knew any of the parties or attorneys, and if he had previously been involved in similar litigation, Mr. Tatum responded "[m]y name i[s] Robert Tatum. I stay at 3908 Littlejohn, here in Fort Worth. I'm employed at American Auto Salvage. That's a wrecking yard. I've been out there for 21 years. I don't know any of the attorneys and I'm not involved in any of this stuff." When asked if he had previously served on a jury, Mr. Tatum answered "Yes. Criminal, about 15 years ago." When asked about his children, Mr. Tatum said "Eleven. M[y] oldest boy is 22." After telling the attorneys that he had twenty grandchildren, Mr. Tatum was asked whether he loved "every one of" his children and grandchildren. Mr. Tatum replied "Right." Mr. Tatum was not questioned about his educational background.

The party that exercised the peremptory challenge must give a "clear and reasonably specific" explanation of "legitimate reasons" for the strike. *Williams,* 804 S.W.2d at 106. Peremptory strikes have been upheld when based in part upon striking counsel's impression that the venireperson did not possess the requisite level of intelligence for the case. *See Prosper,* 788 S.W.2d at 628. However, we find the *Prosper* case to be distinguishable from the case under review. In *Prosper,* the State's reasons for striking black venireperson Norris Lowery were that he had worked with the defendant for five years, considered the defendant a personal friend, and "the fact that he seemed not to possess the necessary intelligence to even respond to the lawyers' and Judge's questions." *Id.* at 627. The record revealed that Mr. Lowery's responses to six of the questions posed to him during voir dire were inaudible and that Mr. Lowery completely failed to respond to another question. *Id.* at 628. Mr. Lowery also gave contradictory answers during voir dire. *Id.* The trial court

found that the prosecutor gave race-neutral reasons for striking Mr. Lowery and the Houston Court of Appeals, Fourteenth District, affirmed. *Id.*

In the case before us, nothing in the record reflects upon Mr. Tatum's intelligence. He consistently answered all questions asked of him. We concede that assessing a venireperson's intelligence is a highly subjective matter. We find, however, that simply stating that a venireperson "didn't appear to be quite that swift," without more, is insufficient to overcome the presumption of discrimination in a *Batson* hearing. "Whimsical explanations will simply not get the job done." *Whitsey,* 796 S.W.2d at 738. The only other reason given for striking Mr. Tatum, his wife's eye injury claim, suggests disparate treatment of black and nonblack venirepersons by the defendants. Both of the reasons offered by defendants for striking Mr. Tatum from the jury panel suggest that the peremptory strike against him was motivated by race. Given the facts before us and the nature of the prosecutor's explanation, we hold that the trial court's implied conclusion that the peremptory challenge was not a pretext but was exercised for race-neutral reasons is clearly erroneous, because it is not supported by the record.

The exclusion of even one member of appellant's race from the jury panel for racial reasons invalidates the entire jury selection process. *Whitsey,* 796 S.W.2d at 716. Having been denied due process in the jury selection process, appellants are entitled to a new trial. *Id.* Appellants' points of error seven, eight, and nine are sustained.

Having so held, we need not address appellants' remaining six points of error dealing with the legal and factual sufficiency of the evidence.

The judgment of the trial court is reversed and the case is remanded for a new trial.