**HOLIDAY INNS, INC., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–95–0032–CV.**

Court of Appeals of Texas,
Amarillo.

May 24, 1996.

Rehearing Overruled June 26, 1996.

Donald E. Cummings, Scott W. Sharp, Lubbock, for appellant.

Dan Morales, Attorney General, Mark Heidenheimer, Assistant Attorney General, Austin, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

REYNOLDS, Chief Justice.

Aggrieved by the judgment the trial court rendered upon the jury's findings in a condemnation proceeding instituted by the State of Texas, Holiday Inns, Inc. presents eleven points of error by which it challenges assorted pretrial and evidential rulings by the trial court, the sufficiency of the evidence to support the jury's findings, and the propriety of the charge of the court. We will overrule the points and affirm.

In June of 1973, the City of Lubbock passed an ordinance precluding land located in the City and fronting U.S. Highway 87 to a depth of 160 feet from being used for improvements. This "set back," according to the State's appraiser, was for the benefit of the Texas Highway Department to accommodate a future highway. The property involved in this litigation fronts the highway and was re-zoned to permit its use by Holiday Inns for the construction of a hotel, which commenced in July of 1984.

To construct Interstate 27 through the City, which essentially expanded and improved U.S. Highway 87, the State filed, on 3 March 1986, its petition to acquire by condemnation 58,138.52 square feet (the land taken) of the 186,656 square feet of land owned by Holiday Inns on U.S. Highway 87 in Lubbock County. Thereafter, the trial court appointed three disinterested freeholders of Lubbock County as special commissioners, who, following a hearing at which both parties appeared in person or by their attorneys, rendered an award in favor of Holiday Inns in the amount of $750,000. Both parties duly filed their objections and exceptions to that award, and the case was set for trial.

Prior to the commencement of the trial, Holiday Inns stipulated that the State had the right to recover and condemn its property, and that the only issue to be tried was that of the compensation owed it by the State. The State deposited into the registry of the trial court the amount of the special commissioners award on 29 July 1986, thereby establishing the date of the taking, and the parties proceeded to trial.

Upon hearing the stipulations of the parties, the evidence and arguments of counsel, the jury, in reply to Question No. 1, found the market value of the land taken to be $224,465. Responding to Question No. 2, which inquired, "what do you find is the amount of damages attributable to Defendant's remaining 128,517 square feet of land and improvements thereon (the remainder)," the jury answered $366,951.23.

In accordance with the jury findings, the trial court rendered judgment in favor of Holiday Inns in the amount of $591,416.23, and decreed that the State recover the difference between that amount and the amount awarded by the special commissioners, which had been deposited into the court's registry. Additionally, the trial court directed Holiday Inns to relinquish to the State its fee simple title in the land taken. Following the trial court's denial of its motions to disregard the jury findings, for judgment n.o.v., and for a new trial, Holiday Inns duly perfected its appeal.

■ By its first three points of error, Holiday Inns contends (1) the real estate appraiser, Lewis Murfee, presented by the State as an expert witness, improperly calculated damages to the remainder, thus his testimony should have been stricken. It follows, Holiday Inns continues, (2–3) that without Murfee's testimony, "there exists no evidence to support the jury's answer to Question No. 2" regarding damages to the remainder, or alternatively, the jury's answer was against the great weight and preponderance of the evidence.

Elaborating upon its challenge to Murfee's calculation of remainder damages, Holiday Inns asserts (A) "The State's Appraiser Equated the 'Costs to Cure' with Damage to the Remainder (the remainder damages), Rather than Considering Such Costs to Cure as a Factor Affecting Market Value"; and (B) "The Amount Paid by the STATE OF TEXAS for the Part Taken Cannot Be Used to

Offset Damages to the Remainder." With respect to both assertions, we note at the outset that a landowner whose property has been partially taken must be compensated not only for the value of the part taken, but also for any damages to the remainder caused by the severance. *State v. Oak Hill Joint Venture,* 815 S.W.2d 827, 830 (Tex. App.—Austin 1991, no writ); 1 Madison Rayburn, Rayburn on Condemnation § 16.34 (1994). The proper measure of damages for taking only part of a tract was first announced in *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936) as the market value of the land actually appropriated and the difference, if any, in the market value of the remainder immediately before and immediately after the taking. *Id.* 89 S.W.2d at 197; *Taub v. City of Deer Park,* 882 S.W.2d 824, 827 (Tex.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995).

With respect to his calculations, Murfee initially explained that he utilized all three of the traditional approaches to value, *see Religious of Sacred Heart of Texas v. City of Houston,* 836 S.W.2d 606, 616 (Tex.1992), to derive a range of values from which he chose, in light of the facts and circumstances of the case, the most reliable fair market value for Holiday Inns's property. Then, upon further direct examination by the State's counsel, the questions and Murfee's answers were as follows:

Q So what is the market value of your remaining property before the taking, Mr. Murfee?

A Market value of the remainder immediately before the taking is $3,026,664.

Q All right. And what is your opinion of the market value of the remainder after the taking?

A $2,880,664 is the market value of the remainder after the taking.

Q So if you subtract the value of the remainder after from the value of the remainder before, what figure do you come up with, please, sir?

A $146,000 is the net damage.

Adding to that amount the value of the part taken, which he had previously testified was $206,709, Murfee calculated the total compensation owed Holiday Inns to be $352,709.

Later, Murfee referred to his appraisal report and, during further examination, the questions and answers were recorded as:

Q You've appraised the whole property?

A Yes, sir.

Q You've appraised the remaining property, have you not? I'm talking about the remainder.

A Yes, sir.

Q And I want to refer to page 60 of your appraisal, please, sir.

A Okay.

Q And how many subsequent pages in the appraisal, please, sir, deals with the appraisal of the remainder after the taking?

A Virtually all of them, sir. Through page 79—through page 80.

\* \* \*

Q What value did you find for the remainder after the taking, please, sir?

A Remainder after the taking of $2,880,664.

The trial court sustained Holiday Inns's objection to the admission of Murfee's appraisal report.

The evidence revealed that construction of Interstate 27 blocked the original access to the Holiday Inns property, necessitating the relocation of the driveway. Holiday Inns's contractor estimated "the construction cost for a new south entry to be approximately $146,000," the amount Murfee ·testified he allowed. After the taking, Holiday Inns purchased from Bailey and Rachwal a separate tract located immediately south of its property, which it maintained was necessary to cure the loss of parking caused by the taking. In this connection, Murfee was asked and answered as follows:

Q What is the indicated compensation that you estimate that HOLIDAY INNS is entitled to in this case, Mr. Murfee, please sir?

A Well, they're entitled to the part taken, which was this part that was actually taken off the property. It's my opinion it

was worth $206,709, and they're entitled to the damage to the remainder, which in my opinion was $146,000.00. And the total of those two amounts to $352,709.00.

Q   Thank you, sir. Mr. Murfee did you recognize any damage to the remainder for the land that was purchased from Bailey and Rachwal, please, sir?

A   No, sir.

Q   And why not?

A   Well, counselor, we paid for the land that was taken, which was money available to buy whatever land they wanted to with it.

Holiday Inns's objection to the testimony and its motion that it be stricken were overruled.

Relying upon *State v. Walker*, 441 S.W.2d 168 (Tex.1969), Holiday Inns asserts that Murfee impermissibly utilized the cost incurred by the hotel to cure the remainder damages occasioned by the taking as the sole basis for his calculation of those damages. Specifically, Holiday Inns maintains that "it is clear from his [Murfee's] testimony that he arrived at this post-taking figure by simply subtracting what he determined to be the cost to cure ($146,000) from the market value of the remainder prior to the taking." Since, according to Holiday Inns, no Texas court "has allowed 'costs to cure' to serve as the *sole* means of calculating damages to the remainder," Murfee did not properly appraise the remainder damages, and his testimony in that regard should not have been permitted. *See Texas Fruit Palace v. City of Palestine*, 842 S.W.2d 319, 323 (Tex.App.— Tyler 1992, writ denied), *cert. denied,* 510 U.S. 915, 114 S.Ct. 305, 126 L.Ed.2d 252 (1993).[1] In response, the State maintains, and we agree, that Holiday Inns's complaint goes to the weight of the evidence and not its admissibility.

The colloquies recorded above evince that Murfee, qualified as an expert witness in the area of real estate appraisal, made a complete appraisal of the market value of the remainder both before and after the taking, which he testified covered 20 pages of his report on the subject, and reached professional conclusions pertaining to the value of Holiday Inns's land. *See State v. Carpenter,* 89 S.W.2d at 197. The value calculated by Murfee as the remainder damages coordinated exactly with the value Murfee averred would be the cost to cure those damages. Although the coincidental appraisement might have diminished the reliability of Murfee's expert testimony, such goes to the weight and not the propriety of the evidence. *See Texas Elec. Service Co. v. Wheeler,* 551 S.W.2d 341, 343 (Tex.1977). After the State concluded its direct examination of Murfee, Holiday Inns was free to challenge his testimony by critical cross examination as it did, and Murfee's competency was always open to challenge. The effect of the testimony elicited, however, was for the jury to determine. *Id.*

■ The trial court determined that Murfee had calculated the damages to the remainder in accordance with *Carpenter* and its progeny and refused to strike his testimony. Since trial courts have substantial discretion in determining the admissibility of evidence of market value in a condemnation case, *Texas Fruit Palace v. City of Palestine,* 842 S.W.2d at 323, and because the trial court's ruling is supported by the evidence, we are not at liberty to disturb it.

Still, Holiday Inns points to Murfee's testimony that he did not recognize any damage to the remainder for the land purchased from Bailey and Rachwal, and that the money paid for the land taken was available to buy whatever land Holiday Inns wanted. Then, Holiday Inns reasons, Murfee's testimony should have been stricken in conformity with the holding in *State v. Enterprise Company,* 728 S.W.2d 812 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), which Holiday Inns interprets to mean "that the amount paid by the condemning authority [for the land tak-

---

1.  Parenthetically, we note that in the *Texas Fruit Palace* case, the appraiser admitted that his theory of appraisal was "unique and not standard practice"; it was for that reason that the trial court excluded, and the appellate court affirmed the exclusion of, the expert's testimony. Holiday Inns accepts that "cost to cure" evidence bears on the diminution of the value of the remainder; however, it maintains, and the State conceded at submission, that such should not be the *sole* basis for calculating those damages.

en] cannot be used to reduce the amount to be paid for the remainder damages." Aside from the fact that the actual holding in *Enterprise Company* was that "[t]he value of any benefits to the condemnee's remaining land may not offset the amount paid for the part taken," *id.,* we do not otherwise concur in Holiday Inns's reasoning.

Based upon its position that the condemnation necessitated its purchasing the land from Bailey and Rachwal for additional parking, Holiday Inns adduced testimony of the "cost to cure" theory of compensation factored into the three appraisal methods employed by its expert appraiser, who explained that without purchasing more land, Holiday Inns's income would have been a lot lower than his estimate. However, in Murfee's opinion, the acquisition of the land for additional parking was not necessitated by the highway.

In this connection, Holiday Inns represents that Murfee did not indicate that the "costs to cure" were factored into a standard appraisal method for determining market value and, therefore, his testimony should not have been permitted. Although there is authority that the "cost to cure" approach may not be used when the cure is accomplished by going outside the tract in controversy, *see, e.g., Religious of the Sacred Heart v. Houston,* 836 S.W.2d at 614 n. 10, and Holiday Inns does not cite any authority to the contrary, the question is whether Murfee's testimony was so improper that it should be stricken.

As earlier noticed, Murfee testified that he utilized all three of the traditional approaches to market value to arrive at the values he used to determine the diminution of the value of the remainder caused by the taking.[2] The fact that he did not consider Holiday Inns's purchase of additional property as a "cost to cure" element of his approaches to the market value of the re-

mainder did not render his testimony inadmissible. Thus, the trial court cannot be faulted for not striking his testimony. Holiday Inns's first point of error is overruled.

Premised upon the trial court's exclusion of Murfee's testimony, Holiday Inns offers its second- and third-point contentions that it established as a matter of law the damages testified to by its expert appraisers, and that the jury's determinations of the damages to the remainder are against the great weight and preponderance of the evidence. Since Holiday Inns was unsuccessful in effecting the exclusion of Murfee's testimony, there is no predicate for the points, and they are overruled without the necessity of further addressing them. Tex.R.App.P. 90(a).

■ With its fourth point of error, Holiday Inns contends the trial court abused its discretion by submitting, in conjunction with Question No. 2 of the court's charge inquiring of the amount of damages to the remainder, the following instruction to the jury regarding the issue of "community damages":

> You are instructed that in answering Question No. 2, you are not to include any increase in value, if any, and decrease in value, if any, by reasons of benefits or injuries to the Defendant in common with the community generally and not peculiar to it and connected with its ownership, use and enjoyment of the particular tract of land part of which has been condemned,and [sic] taking into consideration the uses to which the land condemned is to be subjected.

Holiday Inns objected to the submission, and argues that, because there was no evidence to support its submission, its inclusion in the charge served only to confuse the jury, thereby warranting a reversal.

In arguing the confusion issue, Holiday Inns first cites *Morales v. Chrysler Realty Corp.,* 843 S.W.2d 275, 278 (Tex.1992), where

---

2. In its reply brief, Holiday Inns asserts: "In an attempt to find support for its argument that Mr. Murfee properly determined the market value of the remainder after the taking, the STATE points to testimony" by Murfee pertaining to his appraisal report, which was not admitted into evidence. However, it is of no moment that the appraisal report itself was not admitted because

substantially the same evidence was admitted in the form of Murfee's testimony and a summary of the report he had prepared. *Accord Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 842 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

it was held the trial court properly refused to grant a limiting instruction on community damages in the absence of evidence thereon, because "[a] limiting instruction on the general proscription regarding community damages would have only served to confuse the jury in this case." Then, Holiday Inns continues, the confusion was evidenced by "Jury Note # 1," by which the jury requested clarification of the instruction.[3] Yet, Holiday Inns candidly concedes that it "cannot represent to this Court the exact nature of the confusion caused to the jury by the community damage instruction."

Rule 277 of the Texas Rules of Civil Procedure vests the trial court with considerable discretion in submitting explanatory instructions and definitions. *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). Thus, the standard of review for a trial court's instruction is that an erroneous instruction must have caused, or can be reasonably calculated to have caused, the rendition of an improper verdict. Tex.R.App.P. 81(b)(1); *Island Rec. Dev. v. Republic of Tex. Sav.*, 710 S.W.2d 551, 555 (Tex.1986).

■ Even accepting, as Holiday Inns argues, that the instruction confused the jury, the most that can be gleaned from this record is that any confusion resulted from a misunderstanding of the instruction. It is settled that a misunderstanding of the court's charge by the jury is not reversible error. *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 260 (Tex.1974). Moreover, by Holiday Inns's candid concession, jury misconduct is not presented and, consequently, there is no occasion to probe the minds of the jurors. *Pedernales Elec. v. Public Utility Com'n*, 809 S.W.2d 332, 342 (Tex.App.—Austin 1991, no writ).

Resultantly, Holiday Inns has not shown that the instruction, even if erroneous, caused, or can be reasonably calculated to cause, the rendition of an improper verdict. Its fourth point of error is overruled.

■ By its fifth point of error, Holiday Inns asserts the trial court erred in denying its motion for judgment n.o.v. and for new

trial, and in failing to include, in connection with Question No. 2, its requested jury instruction advising the jury to disregard any knowledge Holiday Inns might, or should, have had concerning the proposed condemnation of its property because such knowledge, as a matter of law, is not relevant. And by its sixth point, Holiday Inns charges the court with error in overruling its objection to, and denying its motion for new trial based upon, the State's incurable jury argument that Holiday Inns should have foreseen the condemnation.

In developing the points, Holiday Inns, merely citing pages of the statement of facts with one exception, states "that the State of Texas repeatedly argued or attempted to imply that HOLIDAY INNS should have anticipated the condemnation by virtue of the 160 foot set back line." Further, "[t]he STATE OF TEXAS asserts that HOLIDAY INNS should be 'penalized' because, ... the 160 foot setback line should have tipped-off the 'prudent' purchaser that a future highway might be placed on the land outside of the setback line." And, by reference to one extraction of the State's argument, Holiday Inns represents that "[d]uring its closing argument, the STATE blatantly argued that HOLIDAY INNS should have anticipated the condemnation (and as such, should receive less damages from the STATE)," because it was said:

> Now, does 160 foot setback line effect the market value of this area that's taken? Sure it does, because a prudent person would go out there and see if the setback is there and know that he couldn't build on the first 160 feet.

Holiday Inns reasons that, since an "owner may not be penalized, under the theory of mitigation, for continuing to improve or develop his property when possessed of knowledge of a public entity's mere future intention to condemn land," 4A Julius L. Sackman, Patrick J. Rohan, Nichols on Eminent Domain, § 14A.04(1) (rev. 3d ed. 1994), the trial court erred in permitting the State to so argue.

---

3. The trial court responded to the note by advising the jury that "Texas law does not permit me

to answer or comment on your request. I refer you to the evidence and the Court's Charge."

We do not address the application of Holiday Inns's cited authority, because its points of error have not been preserved for appellate review. Our review of the cited pages in the statement of facts reveals that, with one exception, Holiday Inns made no objection to the testimony or to the argument. The one exception occurred when Holiday Inns objected to testimony of the 160 foot set back; however, the same testimony was adduced without objection on numerous other occasions, thereby rendering the objection made unavailing. *Lubbock Bus Company v. Pearson*, 277 S.W.2d 186, 190 (Tex.Civ.App.— Amarillo 1955, writ ref'd n.r.e.). With respect to the other complaints, Holiday Inns, in order to preserve the points for appellate review, must have presented a timely request, objection, or motion, stated the specific grounds therefor, and obtained a ruling. Tex.R.App.P. 52(a); *Lemons v. EMW Manufacturing Company*, 747 S.W.2d 372, 373 (Tex.1988). It did not do so, and its fifth and sixth points of error are not before us for review. The points are overruled.

■ During trial, Holiday Inns offered a post-taking videotape of Holiday Inns's property, its exhibit 12, which depicted avenues of travel and various angles of the hotel, accompanied by the narration of Burl Masters. The videotape was offered to show "accessibility and circuity of travel" and "visibility of the hotel." The State objected to the admission of the exhibit on the basis that the damages displayed in the video were noncompensable. The trial court sustained the objection and excluded the videotape and narration, the subject of Holiday Inns's seventh point of error.

Initially, Holiday Inns acknowledges that, in normal circumstances, it would be barred from recovering for loss of accessibility and visibility under *State v. Schmidt*, 867 S.W.2d 769 (Tex.1993), which held that landowners are not as a rule entitled to compensation for a decrease in value of the remainder due to the diversion of traffic, increased circuity of travel, lessened visibility, and interim construction inconvenience. *Id.* at 770; *State v. Munday Enterprises*, 868 S.W.2d 319, 320 (Tex.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994). Next, Holi-

day Inns notes that the principle underlying the *Schmidt* decision was consistent with *Campbell v. United States*, 266 U.S. 368, 372, 45 S.Ct. 115, 116–17, 69 L.Ed. 328 (1924), which held "that just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking." Then, Holiday Inns claims that it suffered a diminution in value to its remainder under an exception to the *Campbell* rule quoted in *Schmidt* to be applied when:

> (1) the land taken from the condemnee landowner was indispensable to the ... project; (2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the ... project.

*State v. Schmidt*, 867 S.W.2d at 778,(*quoting United States v. 15.65 Acres of Land, Etc.*, 689 F.2d 1329, 1332 (9th Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983)).

It is Holiday Inns's position that the land taken from it was indispensable to the project, because otherwise it would not have been taken; that if the land taken was indispensable to the project, the substantiality prong of the exception should be satisfied; and because the property is uniquely hidden and inaccessible as a result of the construction, it was affected in a special, unique way, different from the effect on the surrounding area. Because the trial court excluded exhibit number 12, Holiday Inns argues, it was denied the "opportunity to demonstrate to explain to the jury how the remainder was specially affected by the condemnation."

■ As applied to the claims of lessened visibility and inaccessibility, the elements of indispensability, substantiality, and inseparability are questions of law for the court. *United States v. Reynolds*, 397 U.S. 14, 20, 90 S.Ct. 803, 807, 25 L.Ed.2d 12 (1970). The offer of proof presented to the trial court is

not materially different from the factual situation in *Schmidt.* There, it was held that, as we hold here, the exception to the *Campbell* rule was not applicable. Holiday Inns's claim of lessened visibility and inaccessibility are due entirely to the conversion of U.S. Highway 87 to Interstate 27. The conversion was accomplished, not on the tract condemned from Holiday Inns, but by changes in the entire roadway through the City of Lubbock. Thus, although the tract taken was indispensable to the project, it did not constitute a substantial part of the property devoted to the roadway, and the diminution in the value of the remainder was not shown to be inseparable from the damages caused by the taking. *State v. Schmidt,* 867 S.W.2d at 778–79.

■ With respect to Holiday Inns's claim that the construction made its property inaccessible, we acknowledge that if access is completely denied or materially and substantially impaired, the State must pay damages, which is measured by the diminution in the value of the remainder. Whether the access is of that condition or whether the issue is merely circuity of travel is a question of law for the trial court to first decide. From Holidays Inns's offer of proof, the court reasonably could conclude that access to the hotel, which formerly was direct from U.S. Highway 87, was neither completely denied nor materially and substantially impaired, but is gained by circuity of travel, for which no additional compensation may be recovered. *Id.* at 776–77. We cannot say that the trial court reached the wrong conclusion.

In upholding the trial court's exclusion of the exhibit, we have not ignored Holiday Inns's argument that *Schmidt* should not be extended so far as to ignore the obvious facts of the marketplace, *i.e.,* that a hotel by its very nature must have good access and visibility, and when a taking removes visibility and convenient access, the owner should be entitled to damages for the loss of these major assets. What Holiday Inns has overlooked is that the *Schmidt* Court did consider these factors, and determined that a landowner has no vested interest in the route of passersby or in the visibility of his premises and, therefore, neither circuity of travel nor

impairment of visibility is a legally cognizable element of damages. *State v. Schmidt,* 867 S.W.2d at 774. The seventh point of error is overruled.

■ By its eighth point, Holiday Inns contends that the trial court erred in excluding evidence it offered concerning the 1993 sale of its remainder. By a bill of exception, Holiday Inns sought to establish the fair market value of the remainder through the testimony of Tom Brettschneider, the vice president of asset management for Holiday Inns, and through exhibit numbers 24 through 27 and 33, which pertained to the 1993 sale. Brettschneider averred, during voir dire examination outside the presence of the jury, that Holiday Inns's remainder was sold on 30 September 1993 to Lubbock South Hotels for $1,800,000. The State objected to the admission of the evidence made the subject of Holiday Inns's offer of proof, claiming that "it's too remote in time to our date of taking of July 29, 1986, and we [the State] think the law is very clear on the remoteness of the transactions, and the market has changed." The trial court sustained the State's objection and excluded the proffered evidence.

■ The determination of whether a sale offered to establish fair market value is too remote in time to be admissible is left largely to the discretion of the trial court. *State v. Childress,* 331 S.W.2d 230, 235 (Tex. Civ.App.—Eastland 1959, writ ref'd n.r.e.). Generally, however, the admission of evidence of sales occurring within five years of the date of taking of the subject property may be appropriate. *Board of Regents of University of Tex. Sys. v. Puett,* 519 S.W.2d 667, 672 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

In this instance, the evidence of the sale sought to be introduced by Holiday Inns to prove the market value of the remainder occurred more than seven years after the taking of Holiday Inns's property. Holiday Inns cites no legal authority, nor have we unearthed during our independent research any precedent, which stands for the proposition that the admission of evidence of a sale of property that far removed from the

subject taking is proper. *Cf. Reynolds v. State*, 390 S.W.2d 493, 496 (Tex.Civ.App.—Texarkana 1965, no writ)(outside limit on remoteness, for admissibility purposes, of comparable sale to subject sale is five years). Consequently, we cannot say that the trial court abused its discretion in regarding the evidence of the 1993 sale so remote in temporal proximity from the 1986 taking as to require exclusion. Holiday Inns's eighth point-contention is overruled.[4]

With its ninth point of error, Holiday Inns contends the trial court erred in overruling its objection to the peremptory challenges exercised by the State, which were impermissibly based upon the race of the venirepersons struck, and in denying its motion for new trial based upon those improper strikes. We disagree.

Determining that "racial discrimination has no place in the courtroom, whether the proceeding is civil or criminal," the Texas Supreme Court held in *Powers v. Palacios*, that equal protection is denied when a private litigant in a civil case uses a peremptory challenge to exclude a juror on account of race. 813 S.W.2d 489, 491 (Tex.1991), (*quoting Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *see American Chrome & Chemicals, Inc. v. Benavides*, 907 S.W.2d 516, 517 (Tex. 1995). With the *Powers* decision, the Texas Supreme Court extended to civil cases the edicts of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which proscribed the use of racially motivated peremptory challenges in criminal trials. *Powers v. Palacios*, 813 S.W.2d at 491.

Following the rendition of the *Batson* decision, the state legislature codified the *Batson* holding by incorporating article 35.261 into the Texas Code of Criminal Procedure. Tex. Code Crim.Proc.Ann. art. 35.261 (Vernon 1989). On the civil front, the Texas Rules of Civil Procedure have not been amended to bring them into conformity with the *Edmonson* and *Powers* decisions. Therefore, in the

absence of further civil directives, we will advert to the criminal jurisprudence of our state for guidance, and will apply those principles to the civil litigation before us. *Texas Tech Univ. Health Ctr. v. Apodaca*, 876 S.W.2d 402, 406 (Tex.App.—El Paso, 1994, writ denied).

*Batson* and its progeny require that the complaining party, *i.e.*, Holiday Inns, prove a prima facie case of discrimination. *Id.* That is to say that the complaining party must present evidence that gives rise to a rebuttable presumption of racial discrimination by the striking party, *i.e.*, the State, in the exercise of its peremptory challenges. *Lott v. City of Fort Worth*, 840 S.W.2d 146, 150 (Tex.App.—Fort Worth 1992, no writ). If the complaining party makes out a prima facie showing of discrimination, then the striking party has the burden to rebut that presumption by providing a racially neutral explanation for each peremptory challenge exercised against a minority venireperson. *Id.* At this stage, the trial court must accept a facially neutral explanation unless a discriminatory intent is inherent in the explanation. *Purkett v. Elem*, —— U.S. ——, ——– ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995); *Benavides v. American Chrome & Chemicals*, 893 S.W.2d 624, 626 (Tex.App.—Corpus Christi 1994, writ denied). Then, the complaining party must assume the burden of proving by a preponderance of the evidence that the striking party's explanations are mere pretext for discrimination. *Id.* The trial court then determines whether there was a racially motivated strike. *Lott v. City of Fort Worth*, 840 S.W.2d at 150.

The trial court's decision on the ultimate question of discriminatory intent is to be accorded great deference on appeal. *Lott v. City of Fort Worth*, 840 S.W.2d at 150. If the complaining party is to be successful, it must provide a record illustrating that the trial court's findings are clearly erroneous.

---

4. We decline Holiday Inns's invitation, unsupported by any legal precedent, to consider the question of remoteness "liberally," and to treat the length of time between the taking and the date of the sale as a matter of the weight to be given the evidence rather than a factor affecting its admissibility. We discern no reason, and Holiday Inns has offered no legal basis, for removing from the trial court its substantial discretion in making preliminary evidential rulings in this arena.

*Texas Tech Univ. Health Ctr. v. Apodaca,* 876 S.W.2d at 406–07.

After voir dire and outside the presence of the jury, counsel for Holiday Inns made a "civil *Batson* type motion," alleging that the State had improperly exercised three of its peremptory strikes against one African–American and two Hispanic venirepersons, *i.e.,* Freddy Green, Theresa Cruz, and Adam Flores, solely on account of their race. In rejoinder, the State volunteered the following explanations for its strikes:

> THE STATE: Basically, the deal with Theresa Marie Cruz, Your Honor, the reason for our striking her is because of her relationship with one of our witnesses here, Mr. Bundock, and her husband was terminated or laid off by that company, and so although she said she could be fair and impartial, we didn't necessarily believe that, and that was our reason for striking her. Down here on Freddy Lois Green, who I believe the record will show is black, he's also the only black on the jury panel. Mr. Green indicated that he had pressing business in Fort Worth, basically, we were concerned that he may not be able to listen to the evidence and be attentive enough for fear of him worrying about something that he needed to be in Fort Worth.

> \* \* \*

> THE COURT: He is the juror who indicated that there had been a death in the family and possibly would need to go to Fort Worth for the funeral and family business.

> \* \* \*

> THE STATE: And then this Adam Flores, Judge, we struck him because basically the guy is young. He's 28 years old, he's—you know, we don't feel like that basically he's lived long enough to experience that things that older jurors have experienced in their lifetime, so, basically, that was the reason for striking him. It

didn't have anything to do with his race. None of these people had anything to do with race.

The trial court overruled Holiday Inns's motion and empaneled the jury accordingly, stating that "the peremptory challenges as exercised by the State, the Plaintiff in this case, are free of racial bias and were not made on the basis of any racial consideration...."

▌ At the outset, we recognize the State's assertion on appeal that Holiday Inns did not meet its burden of establishing a prima facie case of discrimination. The point before us presents the novel issue, which was not addressed by the parties in their appellate briefs but was debated during oral submission of the cause, of whether a corporate entity has standing to raise a *Batson* challenge. In order to challenge a possible discriminatory selection of a venireperson, the complaining party must make a prima facie showing that (1) he was a member of a **cognizable racial group;** (2) the striking party exercised peremptory strikes against persons of a minority group; and (3) these facts and other circumstances raise an inference that the striking party excluded venirepersons because of their race. *Benavides v. American Chrome & Chemicals,* 893 S.W.2d at 626 (emphasis added).

▌ Although Holiday Inns does not suggest it is a member of a cognizable racial group, we do not reach the question of its standing to challenge the State's strikes.[5] This obtains, because when the State defended its use of the peremptory strikes before the trial court ruled on the issue of whether Holiday Inns had made a prima facie showing of intentional discrimination, the preliminary issue of whether Holiday Inns had made a prima facie showing became moot. *See Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395, 405 (1991); *see also Benavides v. American Chrome & Chemicals,* 893 S.W.2d at 627. Resultantly, we will review the propriety of

---

5. Unanswered, and often unarticulated, in the civil *Batson* case law is the issue of whether, in a civil proceeding, the three-step prima facie showing should be relaxed to accommodate the perceived recent emphasis on preserving the integrity of every aspect of the judicial process. *Cf. Powers v. Palacios* 813 S.W.2d at 491 (complaining party has third-party standing to assert the equal protection claims of the stricken venireperson).

the trial court's decision on the issue of whether Holiday Inns carried its ultimate burden of persuasion regarding racial motivation, which rests with, and never shifts from the complaining party. *Purkett v. Elem*, — U.S. at —, 115 S.Ct. at 1770–71, 131 L.Ed.2d at 839.

Accepting the burden to provide racially neutral reasons for the peremptory challenges, counsel for the State explained that he did not believe venireperson Cruz could be fair and impartial because her husband had been fired by one of the State's prospective witnesses, that venireperson Green would have been inattentive and preoccupied with the recent death in his family, and that venireperson Flores did not have enough life experience to understand the complexities of the case. Holiday Inns conceded during oral arguments that none of the reasons submitted by the State was "race-based." The State's race neutral reasons were sufficient to activate Holiday Inns's burden to prove that the reasons offered by the State were pretext for discrimination. *Purkett v. Elem*, — U.S. at —, 115 S.Ct. at 1770–71, 131 L.Ed.2d at 839.

Holiday Inns responded to the State's race-neutral reasons. Its response was that (1) there were other venirepersons who were the same age as venireperson Flores who were not struck; (2) venireperson Green indicated that, if selected, he could be attentive to the evidence and arguments at trial; and (3) venireperson Cruz indicated that she could be fair and impartial.

■ The "disparate treatment" response to the State's justification for striking Flores cannot automatically be imputed in every situation where one of the striking party's reasons for striking a venireperson would technically apply to another venireperson whom the striking party found acceptable. *See Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Cr.App.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). A striking party's use of its peremptory challenges is not subject to rigid quantification. *Id.* Indeed, the fact that jurors remaining on the panel possess one or more of the same characteristics as a juror that was stricken, does not establish disparate treatment. *Barnes v. State*, 855 S.W.2d 173, 174 (Tex. App.—Houston [14th Dist.] 1993, pet'n ref'd).

The "young age" justification given by the State for its strike of venireperson Flores constitutes a race-neutral explanation for the exercise of a peremptory strike. *See Barnes v. State*, 855 S.W.2d at 174. The State could also challenge venireperson Green because his preoccupation with family matters would have kept him from giving the cause full attention. *Cf. Allridge v. State*, 850 S.W.2d 471, 485 (Tex.Cr.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993) (prospective juror who was so preoccupied with personal problems that he was unfit to serve on the jury was properly challengeable for cause).

■ Furthermore, a striking party is allowed to make peremptory strikes based upon its legitimate "hunch," so long as racial discrimination is not a motive. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex.Cr.App.1988). The State's explanation concerning venireperson Cruz indicates its belief, *i.e.*, its "hunch," that because Cruz's husband had been fired by one of the State's witnesses, she might not be able to be fair and impartial. Lastly, it is of evidential value that the State averred that "[n]one of these people had anything to do with race." *Cf. Benavides v. American Chrome & Chemicals, Inc.*, 893 S.W.2d at 627 (a party's admission that race was, at least, *a* factor in a strike rendered the strike impermissible under *Batson* and *Edmonson* ) (emphasis added).

The trial court, having listened to the State's explanation and the entire voir dire proceeding, found that there was no purposeful discrimination by the State in exercising peremptory strikes against venirepersons Flores, Green or Cruz. Viewing the record in the light most favorable to the trial court's ruling, as we must, and bearing in mind that the trial court's finding of no racial motivation turns primarily on an assessment of credibility which we have no opportunity to review, *Purkett v. Elem*, — U.S. at —, 115 S.Ct. at 1771–72, 131 L.Ed.2d at 840, we discern no clear error in the trial court's determination. Holiday Inns's ninth point of error is overruled.

■ Prior to the commencement of the trial, the trial court denied Holiday Inns's motion in limine requesting that no reference

be made in the presence of the jury to the fact that Holiday Inns is owned or controlled by Bass, P.L.C., a British licensed corporation.[6] With its final two points, Holiday Inns contends the trial court erred "in refusing to exclude irrelevant and prejudicial testimony related to Bass, P.L.C., and in refusing to sustain [its] objection to the States's improper jury argument regarding Bass, P.L.C."

Holiday Inns maintains that the State elicited testimony from Holiday Inns's witnesses which "emphasized" that Bass, P.L.C. was a British entity, thus attempting to arouse local prejudice against a "foreign" corporation. Further, Holiday Inns assigns error to the State's reference during closing arguments, over its objection, to Bass, P.L.C. as the owner of Holiday Inns. The trial court's failure to exclude any reference to Bass, P.L.C., according to Holiday Inns, was an abuse of discretion.

It suffices to state that each of the passages referenced by Holiday Inns is nothing more than a passing, matter-of-fact referral to Bass, a British entity, as the owner of Holiday Inns. There is no resemblance between the referrals to Bass, P.L.C. and the patently offensive jury arguments and testimony in the cases offered by Holiday Inns to buttress its contention. Moreover, other than the bare claim that the sole purpose of the referrals was to arouse local prejudice against a "foreign" corporation, Holiday Inns has offered nothing else to support the claim or to show it was harmed by the referrals. The jury verdict was within the range of testimony presented by the expert appraisers at trial; therefore, we cannot say that the references to Bass, P.L.C. amounted to such a denial of the rights of Holiday Inns as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Tex.R.App.P. 81(b)(1). Holiday Inns's tenth and eleventh points of error are overruled.

Accordingly, the judgment is affirmed.

---

6. The trial court, in fact, granted that portion of Holiday Inns's motion in limine pertaining to Bass, P.L.C.'s ownership of subsidiaries which engage in the sale of products containing alcohol.