NO. 07-02-0419-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 23, 2004

_____


IN THE MATTER OF THE MARRIAGE OF LINDA
KAY PERKINS AND STANLEY ALTON PERKINS
AND IN THE INTEREST OF MINOR CHILREN

_____

FROM THE 356TH DISTRICT COURT OF HARDIN COUNTY;

NO. 40,640; HONORABLE BRITT PLUNK, JUDGE

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]


In this appeal, appellant Stanley Alton Perkins (Stanley) challenges portions of a decree dissolving his marriage to Linda Kay Perkins (Linda). Although he does not challenge the termination of the marriage relationship, he presents 13 points arguing the trial court erred in its division of the parties' community estate, its determination of child support, its failure to allow reimbursement, and its denial of his evidentiary objections. We overrule those points and affirm the judgment of the trial court.

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

After cohabiting for a period of time in a house located at 860 N. 2nd in Silsbee, the parties were married in September 1988. They had a daughter in 1989 and a son in 1996. The couple separated in December 1998, and Linda filed suit for divorce in November 2000. In responding to Linda's suit, Stanley counterclaimed for divorce and filed a property inventory in which he listed the community property as two houses, four vehicles, various items of personal property, and $19,714 in unsecured community debts. Linda filed an inventory in which she claimed the house located at 860 N. 2nd Street in Silsbee was her separate property. She listed additional community property including a go cart, and a race car and its trailer. She also included $16,008 in unsecured community debts.

The parties were able to agree upon the custody and visitation issues. However, the support and property division issues were tried to the court in May 2002. As it becomes necessary to a discussion of specific points of error, the evidence will be referred to by us. In its August 19, 2002 final decree, and in addition to issues not relevant here, the court divided the "estate of the parties" and awarded both houses to Linda, including the outstanding mortgages, together with a 1988 Mazda automobile, a 1994 Pontiac automobile, 11 other items of personal property, and the unsecured debt owed on two credit cards totaling $12,079.

The court awarded Stanley the 1991 and 1998 model pickup trucks, a 1982 Honda Civic automobile, and 11 other items of personal property, including the go cart and the race car. The race car trailer was not included in the list of personal property items. Stanley was only assigned the debts that he incurred after the couple separated in December 1998, but was ordered to pay child support in the amount of $536 per month.

At Stanley's request, the trial court made findings of fact and conclusions of law. As relevant here, the court found the child support was based on a $32,000 annual income (finding 7), the house located at 860 N. 2nd Street was acquired by Linda before marriage (finding 8), and the couple lived in the 2nd Street house before purchasing a house at 200 S. 14th Street (finding 9). The trial court also found Stanley was not entitled to reimbursement for improvements made to the 2nd Street house because it was Linda's separate property and Stanley benefitted from living in the house during the marriage, as well as by the court's division of the community property and community debts and by the award of his retirement benefits to Stanley (findings 10 and 11). It found the couple's equity in the 14th Street house to be $4,000 (finding 12). In findings 14 and 16, the court found Linda was awarded $5,925 in community assets and $12,079 in unsecured community debts. Findings 15 and 17 were that Stanley was awarded $9,525 in community assets and $3,929 in community debts.

Because this appeal involves the trial court's property division, our review of that division must be made in the context of the general principles governing the division of property in divorce cases. A court always begins with the presumption that all property possessed at the time of the marriage dissolution is community property and this presumption can only be overcome by clear and convincing evidence. Tex. Fam. Code Ann. §3.003 (Vernon 1998). The controlling issue in considering the property division is whether the division is just and right. *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex. App.-- Houston [1st Dist.] 1995, writ denied). The trial court is afforded wide discretion in dividing

3

the marital estate and its decision will not be disturbed absent a clear abuse of that discretion. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985).

A court may not make a division that divests a party of their separate property. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977). However, a mere mischaracterization of property does not require reversal if the division is otherwise equitable. *Magill v. Magill*, 816 S.W.2d 530, 533 (Tex. App.–Houston [1st Dist.] 1991, writ denied).

Spouses may have either of two types of claims for reimbursement from the other party or the community estate. First, if separate property is used to acquire community property, the estate making the separate property contribution has equitable title in the community property to the extent of the contribution. *See In re Marriage of Thurmond*, 888 S.W.2d 269, 273 (Tex. App.–Amarillo 1994, writ denied). As equitable title is a property right, it may not be divested from a spouse without violating our state constitution. *Id.*

Additionally, in 1999, by adding Subchapter E to Chapter 1 of the Family Code, the legislature codified the allowance of equitable claims for reimbursement when one marital estate makes an economic contribution benefitting another marital estate. *See* Tex. Fam. Code Ann. §§ 3.401 - .406 (Vernon Supp. 2004). These provisions address circumstances when, for example, community funds have been used to reduce the debt on separate property. Even so, economic contribution does not arise from expenditures for ordinary maintenance and repair or from contribution of time or effort during the marriage. Tex. Fam. Code Ann. § 3.402(b) (Vernon Supp. 2004).

4

Stanley's 13 points of error fall into four groups. The first group concerns the trial court's property division and failure to award reimbursement to him. His specific complaints are that the court erred in: 1) finding he benefitted from living in Linda's separate property home and in considering that benefit in denying reimbursement; 2) failing to award reimbursement "either for expenditures on community debt or for improvement of [Linda's] separate estate," 9) using his retirement benefits as an offset in making the property division when there was no evidence of the value of the retirement benefits, and 10) considering Linda's use of community funds to pay her expenses as a basis for denial of reimbursement.

Stanley concedes that in his pleadings he did not assert a claim for reimbursement but that does not matter, he asserts, because the issue was tried by consent. Tex. R. Civ. P. 67. The trial court's letter ruling that Stanley was entitled to some reimbursement "based upon community expenditures to separate property" and its fact finding 11 support this contention. Stanley's claims for reimbursement appear to arise from expenditures for the addition of a porch to Linda's separate property at 860 N. 2nd Street, the removal of trees in front of that house, and the reduction of the debt owed on the house.

The trial court found that the porch was added in 2001 at an approximate cost of $1,750.[2] Stanley does not dispute this amount, but citing *Anderson v. Gilliland*, 684 S.W.2d 673 (Tex. 1985), he argues the proper measure for reimbursement is the increase in the value of the property. For two reasons, we disagree. Initially, Stanley does not cite

---

[2]The court also found other work on the house was performed "primarily" by Linda's relatives prior to their marriage.

any evidence that would show how much the new porch increased the value of the property. Secondly, such claims for economic contribution are now governed by sections 3.401 through 3.406 of the Family Code. Section 3.403 sets out a specific method for calculating the amount of a claim for economic reimbursement. It requires evidence of the value of (or equity in) the property at the dissolution of the marriage, the amount contributed by the contributing estate (here $1,750 by the community estate),[3] contributions by the benefitted estate, and the value (or equity) of the property at the time of the marriage. Stanley has not identified evidence of these amounts other than the amount of contribution by the community estate, and our examination of the record convinces us that there is not sufficient evidence to show a basis upon which the trial court could make a specific determination of the amount of Stanley's equitable claim for reimbursement.

Stanley also asserts the trial court erred in failing to allow reimbursement for community funds used to reduce the debt on the S. 14th Street house awarded to Linda as her separate property. Again, we disagree. Apparently, based on Linda's testimony that the house had a value between $57,000 and $60,000[4] and the purchase money debt on the house was $55,983 in February 2002, the trial court found the community estate had a net equity of $4,000 in the house.

---

[3]Stanley cites *McCann v. McCann*, 22 S.W.3d 21, 22 (Tex. App.–Houston [14th Dist.] 2000, pet. denied), as authority for the proposition that improvements made during the marriage are presumed to be from community funds. Linda has not pointed to any evidence to overcome this presumption.

[4]Her expert valued the property at $60,000 to $70,000 and Stanley's expert placed a value of $95,000 on that property.

Pointing to Linda's testimony in which she avers the note balance was "50," Stanley argues that her testimony that the house had a market value of $60,000 was evidence that "$10,000 [was] paid into the house by the community" and he is entitled to reimbursement for half of that amount. However, as we mentioned above, under section 3.403 of the Family Code, a marital estate is only entitled to a reimbursement claim when it makes an economic contribution to property owned by another marital estate. Here, the S. 14th Street house was community property and the debt on the house was also a community debt, thus the payments on that debt were not an economic contribution to another marital estate. Thus, no claim for economic contribution existed. *Id*. The trial court did not err in the method it used for determining the community estate's equity at the time of the marriage dissolution as a basis for making a division of that property. Stanley's second point is overruled.

In his ninth point, Stanley contends that because there was no evidence of the amount of his retirement benefits, the trial court erred in using those benefits to offset his claims for reimbursement. At trial, Linda testified that although she did not have any specific information about the value of Stanley's retirement benefits accrued during the marriage, she requested they be divided equally. Our examination of the record reveals that during the closing arguments, the trial court inquired if there was any information available on the value of Stanley's retirement benefits. Without objection, Stanley's attorney replied that it was a defined benefits plan with no present value but the anticipated benefits were $128 per month. As we noted above, in its findings, the trial court stated that

7

any claim for reimbursement to which Stanley was entitled was offset by the division of the community estate and community debts, including his retirement benefits.

Stanley now argues that the division was an abuse of discretion because, without any information as to the amount of the benefits, the trial court had no basis upon which to make the finding. However, the record does not support that contention. As we have noted, the trial court did have information on the amount of the benefits from Stanley's attorney. Indeed, in considering whether the trial court abused its discretion in its decision, it is important to note that Stanley failed to present evidence upon which the court could determine the amount of his claim for economic contribution.

In a related argument, Stanley takes the position that the trial court failed to comply with Family Code section 6.711 which requires a court, upon proper request, to make findings of fact and conclusions of law characterizing and valuing the party's assets, liabilities, claims and offsets "on which disputed evidence has been presented." Stanley particularly complains of the court's failure to place specific values upon his retirement account and his occupancy of Linda's separate property house. However, there was no evidence presented by either party on the value of Stanley's occupancy of the house and the only information pertaining to the value of Stanley's retirement benefits was from his counsel and was undisputed. Thus, there was no disputed evidence on those items that would require resolution by a trial court finding.

We note Stanley's citation to *Roberts v. Roberts*, 999 S.W.2d 424, 434 (Tex. App.–El Paso 1999, no pet.), for the proposition that Linda bore the burden of presenting evidence

concerning the value of his retirement benefits. However, in relevant part, the *Roberts* court's actual pronouncement was "[t]he *Wallace*[5] opinion states that it is the burden of **the parties** to introduce evidence as to the values of the assets whereby a range of value can be determined by the trial court." (Emphasis added). That comment does not support Stanley's position that the burden was Linda's alone. Even so, no further analysis of the *Roberts* opinion is necessary because the issue is now governed by section 6.711. Given the limited evidence presented at trial by both parties, we cannot say that the trial court's resolution of Stanley's claim for reimbursement and retirement benefits amounted to an abuse of its discretion. Stanley's ninth point is overruled.

In his tenth point, Stanley argues the trial court erred in its finding that Linda had reduced unsecured community debts by $8,450 and used that finding as a basis for denying reimbursement. The trial court's specific finding in its 13th finding of fact was that Linda had reduced the $24,450 balance owed on community credit card debt on the date the couple separated to a balance of approximately $16,000 owed on the date of trial. The thrust of Stanley's argument is that any reduction in that debt cannot be used to deny his claim for reimbursement because Linda's repayment would have been from community funds.

Supporting his argument, Stanley reasons that trial court finding 11 shows it used the debt reduction to deny him reimbursement. Finding 11 reads:

---

[5]*Wallace v. Wallace*, 623 S.W.2d 723 (Tex. Civ. App.–Houston [1st Dist.] 1981, writ dism'd).

9

Any claim that [Stanley] may have for reimbursement for improvements made to the 860 2nd Street property in Silsbee, Texas was offset by the benefit that [Stanley] received by living in the house during the marriage of [Linda and Stanley] and by the division of [the] community property and community debts, including [Stanley's] retirement benefits.

We disagree that this finding shows the trial court improperly used the debt reduction to deny reimbursement. Rather, it makes no mention of the debt reduction, but merely states that Stanley's claim for reimbursement was considered by the court in making its property division. We overrule Stanley's tenth point.

Stanley is correct in his first point contention that the trial court erred in using his occupancy at 860 N. 2nd Street as a basis to offset part of his claim for economic contribution. Section 3.403(e) of the Family Code specifically disallows such use to offset a claim for economic contribution. Even so, the error does not automatically require reversal. We may only reverse if the error probably caused the rendition of an improper judgment or probably prevented Stanley from presenting his case on appeal. Tex. R. App. P. 44.1(a). Given the indefinite evidence supporting Stanley's claim for economic contribution, and viewing the property division as a whole, we cannot say the error probably caused the rendition of an improper judgment or prevented Stanley from presenting his appeal. Stanley's first point is overruled.

Stanley's second group of points concern the trial court's child support provisions. In his third point, he asserts the trial court erred in failing to provide a reduction in child support when the older child turned 18. His only supporting argument is a statement that there is a seven year age difference between the two children and the order should

"decrease to around $400/month" when the older child turns 18. His argument only references the divorce decree provision setting support at $536 per month and cites no authority supporting his contention that the omitted provision requires reversal.

Texas courts have rejected identical arguments. *See Ex parte Mathis*, 822 S.W.2d 727, 732 (Tex. App.–Tyler 1991, no writ), citing *Gross v. Gross*, 808 S.W.2d 215, 219 (Tex. App.–Houston [14th Dist.] 1991, no writ). When the first child turns 18, by virtue of Texas Family Code section 156.401 (Vernon 2002), Stanley has the right to seek a modification of his support obligation. Stanley's third point is overruled.

Stanley's fourth, fifth, and sixth points are closely related. In point four, he assigns error to the trial court's failure to state his net resources as required by section 154.130(b) of the Family Code. In point five, he argues the trial court improperly deviated from the net resource calculation guidelines, and in point six, he argues the court presumed he could earn additional income.

Section 154.130 of the Family Code only requires findings on, *inter alia*, the monthly net resources of the obligee and obligor if: 1) a party files a written request not later than ten days after the hearing, 2) a party makes an oral request during the hearing, or 3) the court orders an amount of child support that varies from the statutory percentage guidelines. Tex. Fam. Code Ann. §154.130(a) (Vernon 2002).

The hearing in this case was held on May 15, 2002. Stanley's request for findings under section 154.130 was not filed until August 29, 2002, which was not within the requisite statutory time period. He does not contend, and the record does not show, that

11

he made an oral request for findings during the hearing. Although Stanley additionally argues the findings were required because the support ordered varied from the statutory guidelines, without a finding on net resources, we cannot determine if there was a variance from the percentage guidelines. Even so, we do note that the trial court found that appellant's support obligations "should be based upon a gross yearly amount of $32,000." Thus, in round figures and based upon the 2002 tax charts adopted pursuant to section 154.061(b) of the Family Code, appellant's net monthly resource would be $2,132. Under the child support guidelines set out in section 154.125, his child support obligations would be $533. The trial court's support order of $536 was within the purview of the statutory guidelines. Stanley's fourth and fifth points are overruled.

The gist of Stanley's sixth point is that the trial court erred in finding his support should be based upon a gross annual income of $32,000 when the evidence showed that his income at the time of trial was $29,738. He argues that this amounts to a finding that he was intentionally underemployed, *see* Tex. Fam. Code Ann. §154.066 (Vernon 2002), and points out that such a finding requires evidence of a design to reduce child support payments. He cites and relies upon *Dubois v. Dubois*, 956 S.W.2d 607, 610 (Tex. App.–Tyler 1997, no pet.), in which the court reversed a finding that the father's earning potential was $2,820 per month when the only evidence on the question was that his current income was less than $1,000 per month. *Id.* at 611.

Unlike *Dubois*, the court's finding here was based upon an average of actual earnings, rather than earning potential. In its finding of fact number seven, the court found Stanley's annual income for the three previous years was $35,859 in 1999, $37,457 in

12

2000, and $29,738 in 2001. The court's $32,000 recitation was well below his average earnings of $34,351[6] during those years. Thus, the $32,000 finding was not based upon a determination of intentional underemployment, but upon the evidence of his actual income, recognizing that Stanley's income varied, and giving appropriate weight to his decreased earnings the previous year. The record does not show that the trial court abused its discretion in making the finding. Stanley's sixth point is overruled.

In his seventh and eighth points, Stanley asserts the trial court erred in not considering Linda's net resources and failing to reduce his support obligations because of those resources. He argues that the trial court's alleged failure violated Article 1, Section 3a of the Texas Constitution which prohibits the denial of equal protection on the basis of gender. In support of that proposition, he cites and relies upon *Ulrich v. Ulrich*, 652 S.W.2d 503 (Tex. App.–Houston [1st Dist.] 1983, no writ) and *Kish v. Kole*, 874 S.W.2d 835, 837 (Tex. App.–Beaumont 1994, no writ). However, those cases do not support his proposition. For example, in *Ulrich,* the appellate court recognized that both parents have a continuing duty to support the children but, after reviewing the assets and obligations of the parties, opined that there was no constitutional or statutory violation and held the trial court acted within its discretion in failing to order the mother to pay child support. *Ulrich,* 652 S.W.2d at 506. Likewise, in *Kish,* the appellate court held that a trial court, after considering the ability of both parents to contribute to their child's support, did not abuse its discretion in failing to order the mother to pay child support.

---

[6]Including appellant's income for 1997 and 1998, the two years previous to the years recited only decreases Stanley's average income to $34,260 per annum.

The record does not support Stanley's argument that the trial court erred in setting the amount of child support within the statutory guidelines and he has not presented any challenge to the constitutionality of the statutes. Stanley's seventh and eighth points are overruled.

In his final group of points, Stanley challenges the admissibility of the testimony of Linda's expert witness on the value of the real property. In doing so, he posits that the expert's testimony should have been excluded because Linda did not timely supplement her discovery responses (point 11), the witness was not qualified as an appraiser (point 12), and the reliability of the witness's testimony was not shown (point 13).

When Linda called Bob Metz, the witness in question, to testify on the value of the property, Stanley objected on the basis that Metz had not been included in the list of witnesses contained in her discovery response. Linda's attorney responded that he had informed Stanley's attorney of his intent to call the witness and included with the letter a copy of Metz's report. Stanley's counsel did not deny receiving the letter but, rather, argued that exclusion was required because Linda had not formally supplemented her discovery response. After a discussion in which the parties discussed a prior hearing during which Linda's counsel stated that Metz was going to appraise the property, Stanley's objection was overruled.

In support of his proposition that the trial court erred, Stanley cites Rules of Civil Procedure 194.2 and 193.5 as establishing Linda's duty to provide, and if necessary supplement, discovery responses concerning her expert witnesses. He does not claim the

14

evidence unfairly surprised him. Rulings admitting or excluding evidence are committed to the trial court's sound discretion. *In re K. S.*, 76 S.W.3d 36, 39 (Tex. App.–Amarillo 2002, no pet.) *citing Texas Dept. of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). A trial court abuses its discretion when it rules without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Under this record, the trial court did not abuse its discretion in overruling Stanley's objection. Stanley's eleventh point is overruled.

In supporting his twelfth point contention that the trial court abused its discretion in admitting Metz's testimony, Stanley contends he "was not, in fact, a qualified appraiser." Texas Rule of Evidence 702 governs expert opinion evidence. The rule permits testimony by witnesses qualified as experts "by knowledge, skill, experience, training, or education." The evidence here showed that the witness had been a licensed real estate agent for six years at the time of trial. His work included helping home sellers decide what price to ask for their homes. He admitted he was not a licensed appraiser,[7] and was careful not to describe his valuation as an appraisal, but used the term "market analysis" instead.

By its terms, Rule 702 does not require a witness to have any particular license to be qualified as an expert. Rather, the rule allows experience to be shown by "knowledge, skill, experience, training, or education." Because the qualifications are listed disjunctively, proof of any of them can establish the requisite expertise. Again, a trial court has broad discretion in determining the admissibility of expert evidence, and its decision will not be

---

[7]*See* Texas Appraiser Licensing and Certification Act, Tex. Occ. Code Ann. Ch. 1103.001 *et seq.* (Vernon Pamp. 2003).

15

reversed unless an abuse of that discretion is shown. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002). Here, Metz testified without contradiction that he had six years experience as a real estate agent, which included determining approximate values of real property. That evidence is sufficient to support the trial court's finding that he was qualified under Rule 702 to give opinion testimony on that question. Although Stanley argues that "only an appraiser can render an expert opinion on values on the basis of comparable values," the rule contains no such requirement. Stanley's twelfth point is overruled.

In his thirteenth and final point, Stanley argues that Metz's testimony was erroneously admitted because its reliability could not be shown. His argument is based upon statements in *Guadalupe-Blanco River Authority v. Kraft*, 77 S.W.3d 805 (Tex. 2002), that a valuation fails to meet the reliability requirement of expert testimony if it is based upon a "bald assurance" that the witness used comparable sales or sales that were not truly comparable and a court should independently evaluate the underlying data in determining if the opinion itself is reliable. *Id.* at 808.

In advancing this argument, Stanley relies upon criticisms of Metz's method of arriving at his valuation which were made by Stanley's expert, David Stanley. David Stanley initially averred that he believed the square footage used by Metz was incorrect because he found the house in question to have 1834 square feet of floor space while Metz used a size of 1644 square feet, obtained from the house plans. In attempting to distinguish the comparable properties used by Metz, Stanley pointed out that the comparative properties were much older than the house at 200 S. 14th Street and several

16

of them had siding, while the 14ᵗʰ Street house had a brick veneer. On appeal, Stanley also emphasizes the sale comparisons used by Metz occurred in 1999 and 2000, some two years before trial. In that connection, he cites *Holiday Inns Inc. v. State*, 931 S.W.2d 614 (Tex. App.–Amarillo 1996, writ denied), for the proposition that the comparable sales used by Metz were too remote in time to be properly used. He also argues that the comparables were not in a similar area, and in support of that theory, cites *Urban Renewal Agency v. Georgetown Sav. and Loan Association*, 509 S.W.2d 419, 422 (Tex. Civ. App.–Austin 1974, writ ref'd n.r.e.).

In considering whether the trial court abused its discretion in finding Metz's testimony met Rule 702 requirements and in determining its credibility, it is helpful to compare that testimony with that of David Stanley. David Stanley also testified that he formed his opinion based on the value of other houses located in the "same area." He never defined what he considered the "same area." Although Linda testified that the 200 S. 14ᵗʰ Street house was located within 200 yards of a railroad switching yard, as one of his comparable properties, David Stanley used a property located on F.M. 112 a few miles out of town and not near any railroad track. We also note that the value of some of the comparable properties used by David Stanley were appraisal values, not sale values. Moreover, he did not testify as to the date of those appraisals.

In *Holiday Inns*, we held a sale seven years after a condemnation was not comparable for the purpose of determining a property's value. 931 S.W.2d at 623. However, we went on to note that the matter is generally left to the discretion of the trial court and opined that "evidence of sales occurring within five years . . . may be

17

appropriate." *Id*. Here, the oldest comparable sale used by Metz was three years old, but the record does not show the age of the appraisals used by David Stanley.

While the exact distance between the property at issue and the comparables used by Metz is not shown, he described them as "right across the railroad track," "across the way," and "on Avenue P." In contrast, at least one of the properties used by David Stanley was not in the same city. Suffice it to say, after reviewing the record, we cannot say the trial court abused its discretion in admitting Metz's testimony and determining the weight to be given it. Stanley's thirteenth point is overruled.

In summary, all of Stanley's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice